712 P.2d 13

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Richard Samuel LUJAN, Defendant-Appellant.**

**No. 8161.**

Court of Appeals of New Mexico.

Dec. 3, 1985.

Certiorari Denied Jan. 7, 1986.

**668**

Paul G. Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Deborah A. Moll, Asst. Public Defender, Santa Fe, for defendant-appellant.

## OPINION

GARCIA, Judge.

Defendant appeals his conviction for aggravated assault and child abuse. Five appellate issues have been briefed and are submitted to the court for resolution. The issues are:

1) whether sufficient evidence supports the conviction,

2) whether defendant's actions come within the child abuse statute, NMSA 1978, Section 30–6–1(C) (Repl.Pamp.1984),

3) whether the indictment should have been dismissed on the grounds of double jeopardy,

4) whether the indictment should have been dismissed on the grounds of prosecutorial vindictiveness,

5) whether the trial court erred in allowing impeachment by extrinsic evidence.

We affirm defendant's conviction.

## SUBSTANTIAL EVIDENCE

We utilize the substantial evidence test to determine whether the evidence supports the jury's verdict. The tenets of the rule are threefold: 1) that substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) that on appeal, all disputed facts are resolved in favor of the successful party, with all reasonable inferences indulged in support of the verdict, and all evidence and inferences to the contrary discarded; and 3) that although contrary evidence is presented which may have supported a different verdict, the appellate court will not weigh the evidence or foreclose a finding of substantial evidence. *State v. Martinez*, 95 N.M. 445, 623 P.2d 565 (1981); *McCauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968); *Tapia v. Panhandle Steel Erectors Company*, 78 N.M. 86, 428 P.2d 625 (1967). In accord with the substantial evidence test, we view the facts most favorable to the state.

## FACTS

Don Romero and his spouse, Patricia, were leaving a Walgreen's store located in Albuquerque. Patricia was carrying their seven-month-old baby in her arms. Defendant and four others were in a car parked next to the Romero's vehicle. As the Romeros approached their pickup, defendant and the other occupants of the car began whistling at Patricia and making lewd remarks. The verbal harassment of the Romeros escalated to racial epithets and curses. When the Romeros reached their pickup and got in, defendant pulled his vehicle alongside the truck's passenger side and directed additional profanities at Patricia. The Romeros quickly drove away from the parking lot onto Central Avenue. Defendant pursued the Romero's truck. When defendant overtook the truck, he repeatedly honked his horn, cursed at the truck's occupants, and yelled at Mr. Romero to pull over. Mr. Romero accelerated in an attempt to evade his pursuers. Defendant swerved his vehicle towards the truck and the occupants of defendant's vehicle began to throw beer bottles and cans at the pickup. One beer can entered through Mr. Romero's open window, cracked the inside of his windshield, ricocheted, and struck the infant on his forehead. Defendant then began to ram the Romero pickup with his car until the bumpers of both vehicles locked, forcing them to stop.

Several of the occupants of defendant's vehicle jumped out and attacked Mr. Romero. One of the occupants struck Romero on his face with a tire tester, a device described as an 18-inch piece of wood with a 3-inch galvanized pipe attached to one end. The blow broke Mr. Romero's jaw and shattered several of his teeth. Patricia Romero got down from the vehicle and pleaded with the assailants to leave her husband alone. One of the men responded to her pleas by repeatedly striking her in the face.

Another occupant in defendant's vehicle grabbed a metal awning pole from the back of the pickup and began beating Mr. Romero with it. Romero fought off his assailants, ultimately disarming them. Some of the assailants fled, but Mr. Romero was able to hold the others at bay until the authorities arrived.

## SUBSTANTIAL EVIDENCE

Following the proceedings in the metropolitan court, discussed *infra*, defendant was indicted on charges of aggravated assault, aggravated battery and child abuse. After a jury trial in district court, defendant was acquitted of battery, but convicted of aggravated assault and child abuse.

■ Defendant initially challenges his convictions on the basis of sufficiency of evidence and argues that he did not see the infant, did not know the infant was in the

pickup, and no evidence has been presented showing that he threw the can of beer that struck the child. Secondly, defendant argues that no witness has identified him as an assailant and, at most, the evidence showed that he violated driving rules by engaging in a game of "chicken." This, he states, does not show any shared intent or the active encouragement or approval of the crime.

We reject defendant's arguments. *Cf. State v. Luna,* 92 N.M. 680, 594 P.2d 340 (Ct.App.1979). The appellate court does not weigh the evidence, but determines whether there is substantial evidence to support the jury's verdict. *State v. Martinez.* In this case, the evidence, and reasonable inferences which may be legitimately drawn from the evidence, would allow the jury to determine that defendant was aware of the child's presence, and had the shared intent to assault the occupants of the pickup. The Romeros testified that they entered the pickup, carrying the infant, while defendant and his companions were in front of the truck. The evidence demonstrates that defendant actively participated in the verbal and physical attacks on the Romero family. He engaged in the name-calling and threats, pursued the Romeros and drove in such a manner as to endanger the occupants of the pickup. He repeatedly rammed his vehicle into the Romero's truck, forcing it to stop. Whether defendant's conduct unwittingly provided an opportunity for the crime to occur, as defendant argues, or whether it helped, encouraged or caused the crime to be committed, was a jury question which has been resolved against him.

## WHETHER DEFENDANT'S ACTION COME WITHIN THE CHILD ABUSE STATUTE

Section 30–6–1(C), prohibiting the intentional or negligent abuse of a child, provides that a "person" who causes or permits a child to be placed in a situation that may endanger a child's life or health, is liable for the crime of child abuse. *Cf.* § 30–6–1(B).

In construing the statute, the court's overriding concern is to give effect to the intent of the legislature. *First Nat. Bank v. Southwest Yacht & Marine Supply Corp.,* 101 N.M. 431, 684 P.2d 517 (1984). Legislative intent is to be determined primarily by the language of the statute, and words will be given their plain and ordinary meaning unless a different intent is clearly indicated. *State v. Pedroncelli,* 100 N.M. 678, 675 P.2d 127 (1984); *Phoenix, Inc. v. Galio,* 100 N.M. 752, 676 P.2d 829 (Ct.App. 1984). When no contrary intent is indicated and the words are free from ambiguity, no other means of interpretation should be resorted to and there is no room for construction. *Perea v. Baca,* 94 N.M. 624, 614 P.2d 541 (1980); *Arnold v. State,* 94 N.M. 381, 610 P.2d 1210 (1980); *State v. Elliott,* 89 N.M. 756, 557 P.2d 1105 (1977),

The use of the word "person" in the statute must be presumed to carry its ordinary meaning. There is no ambiguity in the statute nor is there any reason to believe the legislature did not intend to proscribe the conduct in question when committed by any "person." There exists neither cause nor justification for this court to limit the legislative choice made by the appropriate law-making body.

Dicta in *State v. Coe,* 92 N.M. 320, 587 P.2d 973 (Ct.App.1978), may appear to offer a contradictory interpretation. In *Coe,* defendant maintained that NMSA 1953, Section 40A–6–1(C), which was repealed in 1973, but contained the exact language as § 30–6–1(C), was unconstitutionally vague. In finding that "reasonable adults" would have no difficulty in ascertaining the proscribed conduct, the court stated:

> Defendant's contention, that because of its negligence requirement the statute covers any and all harm that might befall a child, is without substance. * * *
>
> The statute then does not apply to ordinary situations where a child is injured, *but only to those where the parent performs or fails to perform some abusive act.* (Emphasis added).

*Id.* at 321, 587 P.2d at 974.

*Coe* focused on the type of behavior prohibited by the child abuse statute, not the

class of possible defendants. This interpretation is supported by the fact that in *Coe*, the defendant was not the parent of the child he murdered, but was merely living with the child's mother. Additionally, in ruling that the statute was constitutional, the court noted that the legislature "acted within its province to protect abused children." *Id.* at 322, 587 P.2d at 975. There is no reason to believe that the legislature intended that its protection be limited only to the children of abusive parents. *See State v. Howell* 93 N.M. 64, 596 P.2d 277 (Ct.App.1979) (Defendant was the husband of the child's babysitter and did not occupy a parental or guardianship role in relation to the child, but was prosecuted under the child abuse statute).

Section 30–6–1(C) forbids anyone from endangering the life or health of a child. The legislature's decision to criminalize the conduct described by the statute reflects a compelling public interest in protecting defenseless children. *State v. Lucero*, 87 N.M. 242, 531 P.2d 1215 (Ct.App.1975). The adoption of defendant's argument would interfere with the legislature's decision. There is no question that defendant's behavior endangered the child's life. We decline to hold defendant is not within the ambit of § 30–6–1(C).

## WHETHER THE INDICTMENT SHOULD HAVE BEEN DISMISSED ON DOUBLE JEOPARDY GROUNDS

Defendant was arrested on September 2, 1982 pursuant to a criminal misdemeanor complaint filed in metropolitan court. The complaint charged defendant with six misdemeanor offenses including reckless driving, tampering with a vehicle, damage to property, battery (with reference to the child), and battery without great bodily harm (with reference to Mr. and Mrs. Romero). After many delays, continuances and unsuccessful plea negotiations, the case was finally set for trial. During the interim, more than six months had elapsed from the filing of the complaint. Defendant sought and obtained a writ prohibiting the metropolitan court proceedings because of this violation of his right to a speedy trial. NMSA 1978, Metro.R. 55(b) (Repl. Pamp.1985). The state filed a notice of appeal, but the appeal was dismissed due to the state's noncompliance with time limitations. NMSA 1978, Metro.R. 71 (Repl. Pamp.1985); *see Smith v. Love*, 101 N.M. 355, 683 P.2d 37 (1984).

Subsequent to the dismissal of the appeal, defendant received a target letter pursuant to NMSA 1978, Section 31–6–11(B) (Repl.Pamp.1984) advising him that the case would be submitted to the Bernalillo County Grand Jury. Defense counsel contacted the prosecuting attorney concerning the case, and was advised that the case was being presented because defendant had been successful in having the metropolitan court proceedings dismissed.

Defendant was subsequently indicted on three felony counts including: aggravated battery (deadly weapon), or in the alternative, aggravated battery (great bodily harm), aggravated assault with a deadly weapon and child abuse. Defendant sought dismissal of the indictment based on double jeopardy grounds and argued that the state violated his constitutional guarantee against double jeopardy by obtaining an indictment and prosecuting him in district court after charges arising from the same incident were dismissed in metropolitan court.

The New Mexico Constitution and the Fifth Amendment to the United States Constitution protect citizens by barring subsequent prosecutions for the same crime. N.M. Const. art. II, § 15; U.S. Const. amends. V and XIV. The purpose of the double jeopardy prohibition in both the state and federal constitutions is to prevent the government from harassing citizens by subjecting them to multiple suits until a conviction is reached, or from repeatedly subjecting citizens to the expense, embarrassment and ordeal of repeated trials. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *State v. Manzanares*, 100 N.M. 621, 674 P.2d 511 (1983); *State v. Spillmon*, 89 N.M. 406, 553 P.2d 686 (1976).

Defendant contends that the metropolitan court case was dismissed as a result of the state's failure to timely prosecute, and by allowing the state to present its case to a grand jury, the trial court allowed the state to skirt the speedy trial dismissal under Metro. Rule 55. In a pretrial ruling, the state successfully argued against dismissal by urging the district court to adopt the jurisdictional exception to double jeopardy. Defendant contends that the principle of collateral estoppel, part of the fifth amendment's guarantee against double jeopardy, applies in this case. Defendant argues that the six month rule prohibited trial in the metropolitan court, and the state is now estopped from a retrial.

■ New Mexico recognizes collateral estoppel as a bar to a retrial in certain situations. In *State v. Orosco*, 99 N.M. 180, 655 P.2d 1024 (Ct.App.1982), we quoted from *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469, 475:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

That is not the case here. There was no trial in the metropolitan court. No ultimate fact was finally and fully adjudicated, and the principle of collateral estoppel is not applicable.

■ The trial court relied on the jurisdictional exception to double jeopardy as grounds for a denial of defendant's motion to dismiss. The concept of a jurisdictional exception to double jeopardy was adopted in *State v. Goodson*, 54 N.M. 184, 217 P.2d 262 (1950), and recently reaffirmed by the New Mexico Supreme Court in the consolidated cases of *State v. Padilla* and *State v. Fugate*, 101 N.M. 58, 678 P.2d 686 (1984), *aff'd mem. sub nom. Fugate v. New Mexico* by an equally divided court, 470 U.S. ——, 105 S.Ct. 1858, 84 L.Ed.2d 777 (1985). Stated simply, the jurisdictional exception

means that jeopardy cannot extend to an offense beyond the jurisdiction of the court in which the accused is tried. *State v. Manzanares*. There can be no double jeopardy if the metropolitan court, which sought to try the misdemeanor offenses, did not have jurisdiction to try the felony offenses. *State v. James*, 93 N.M. 605, 603 P.2d 715 (1979). Defendant was indicted for felony offenses which were outside the jurisdiction of the metropolitan court. *See* NMSA 1978, Section 34–8A–3 (Cum.Supp. 1985). Thus, the exception is applicable.

In addition to the jurisdictional exception, the state builds its case against reversal upon an alternate foundation known as the necessary facts exception. Because of our disposition of this issue on jurisdictional exception grounds, we do not reach the applicability of the necessary facts exception.

The trial court denied the motion to dismiss on the basis of the jurisdictional exception, and we agree that the exception is applicable. We determine that the trial in district court did not twice place defendant in jeopardy in violation of the state or federal constitutions.

## WHETHER THE INDICTMENT SHOULD HAVE BEEN DISMISSED ON THE GROUNDS OF PROSECUTORIAL VINDICTIVENESS

On the morning of trial, defendant sought a dismissal of the indictment based on prosecutorial vindictiveness. Defendant argued that he had succeeded in barring the trial in metropolitan court and in having the state's appeal dismissed, and was being penalized by the state for having exercised a protected legal right. In support of his argument, defendant cites the prosecutor's comment that felony charges were being pursued because defendant had been successful in obtaining a writ of prohibition against the misdemeanor prosecution.

To counter defendant's argument the state relies on two theories: first, the state argues that defendant's motion was barred by his failure to comply with time limita-

tions specified by NMSA 1978, Crim.P.R. 33(d) (Repl.Pamp.1985), which provides that motions attacking the indictment are to be made within twenty days from the date of arraignment. Defendant's motion concerning prosecutorial vindictiveness was not filed until the date of trial, some four months after arraignment.

■ We summarily dispose of the state's timeliness argument. Prosecutorial vindictiveness involves defendant's fundamental right to due process of law. *State v. Coates*, 707 P.2d 1163 (N.M.1985). Defendant did not waive his right to raise this issue by his noncompliance with Rule 33(d). *State v. Stevens*, 96 N.M. 753, 635 P.2d 308 (Ct.App.1981), *rev'd on other grounds*, 96 N.M. 627, 633 P.2d 1225 (1981).

■ The state next argues that defendant has failed to meet his burden of proof. In *State v. Stevens*, 96 N.M. 627, 633 P.2d 1225 (1981), the New Mexico Supreme Court reversed the Court of Appeals' determination that there was a presumption of vindictiveness on the part of a prosecutor when defendant exercised a procedural right that resulted in the need for a reindictment on a more serious charge. In *Stevens*, the Court of Appeals was concerned with the problems inherent in gauging the state's subjective motivation, and opted for the imposition of a presumption against the state which could be rebutted by the demonstration of other, valid reasons for obtaining higher charges. Following a thorough review of developing case law, and after noting that the United States Supreme Court has not extended such a presumption to pretrial and trial stages of criminal proceedings, the New Mexico Supreme Court rejected the presumption of vindictiveness at the pretrial stage. The court stated:

> We are sensitive both to a defendant's due process rights and to the need for full prosecutorial discretion in seeking indictments. We would not hesitate to impose a presumption of vindictiveness if we felt that such a presumption were necessary to protect defendants, in a pretrial setting, from deprivations of due

process. We do not feel that such a presumption is necessary, however.

> At the pretrial stage the prosecutor has not gone through the effort of a trial and therefore has less at stake and less motive to act vindictively. * * *. [M]any actions taken by a prosecutor prior to conviction might appear vindictive yet are required by our system of criminal justice. We do not find at the pretrial stage the type of motivation sufficient to presume vindictiveness. Imposition of a pretrial presumption of vindictiveness would interfere with proper prosecutorial discretion. Prosecutors would be required to justify actions properly taken as adversaries but which may appear vindictive, adding burdens to the criminal justice system. Prosecutors might feel compelled to press the severest charges possible at the outset, to the detriment of defendants.

*Id.* at 630, 633 P.2d at 1228.

With the rejection of the presumption of vindictiveness at the pretrial stage, defendant must shoulder the burden of proof and must demonstrate that the state's charging decision was motivated by a desire to punish defendant for having exercised a legal right. In *Stevens*, the Supreme Court commented that the indictments were obtained through the grand jury, which traditionally has afforded protection against improper prosecutorial activity. There was no showing in *Stevens* that the grand jury procedure was inadequate to protect the rights of defendant. Nor is there a showing that the procedure is inadequate here. The charges were presented to a grand jury which found probable cause to accuse defendant of the crimes, and probable cause to direct that defendant should stand trial for these offenses. There is a significant difference between *Stevens* and the case at bar. In *Stevens*, the state offered no explanation for having sought the higher charges. In this case, the state offers several reasonable explanations for its charging decision. Specifically, the state points out that prior to the issuance of a writ of prohibition, there were discussions concern-

ing the dismissal of charges in the metropolitan court and submission of charges to the district court because the metropolitan court was reluctant to allow utilization of an "aider or abettor" theory. Secondly, the state argues that the original charges were filed in metropolitan court when Mr. Romero's injuries appeared to be minor bruises and two broken teeth. Subsequent to the filing of the charges, the prosecutor learned of the severity of Mr. Romero's injuries, which included a broken jaw with a permanent impairment, and the need for Mr. Romero to undergo reconstructive plastic surgery. The state asserts that its decision to prosecute on felony charges in district court was directly related to the new knowledge of the severity of the victim's injuries. Third, the state argues that societal interests in prosecuting violent crimes compelled the state to continue its prosecution of defendant, even though trial on the misdemeanor charges had been barred. Fourth, the state argues that the charging decision was made pretrial, prior to the adjudication of any fact. Finally, the state argues that while the prosecutor's comment may be viewed as vindictive, equally plausible non-vindictive reasons exist for the charging decisions.

While the trial court did not specify the basis for its denial of defendant's motion to dismiss, given the burden of proof requirements imposed upon defendant, and the equally plausible, valid explanations offered by the prosecutor, including those explanations offered prior to the time prosecutorial vindictiveness was made an issue, we cannot say that the trial court abused its discretion in denying defendant's motion.

## WHETHER THE COURT ERRED IN ALLOWING IMPEACHMENT BY EXTRINSIC EVIDENCE

On cross-examination, defendant testified that he knew each of the occupants in his vehicle. He denied having made a statement to the police at the scene that the occupants were hitchhikers whom he did not know.

On rebuttal, the state called the investigating officer and Mr. Romero who related prior statements of defendant which were inconsistent with his trial testimony. Mr. Romero testified that defendant told the police officers that he did not know the other men because they were hitchhikers. The police officer also contradicted defendant's trial statement.

■ Defendant argues that the trial court erred in admitting the rebuttal testimony because it was extrinsic evidence on a collateral issue. We disagree. The evidence was extrinsic, but not collateral.

A test of whether a matter pursued on cross-examination for the purposes of impeachment is irrelevant or collateral is whether the cross-examining party would have been entitled to prove it as part of his case in chief.

2 *Wharton's Criminal Evidence*, § 467 (13th ed. 1972); *see also McCormick on Evidence* § 36 (1972); *State v. Ross*, 88 N.M. 1, 536 P.2d 265 (Ct.App.1975).

■ Defendant's conduct at and immediately after the incident is relevant. The conduct of an accused after a crime may circumstantially establish his participation in the crime. *People v. Jones*, 108 Cal. App.3d 9, 166 Cal.Rptr. 131 (1980); *Kimbro v. State*, 152 Ga.App. 893, 264 S.E.2d 327 (1980); *Young v. State*, 176 Ind.App. 32, 373 N.E.2d 1108 (1978); *Medellin v. State*, 617 S.W.2d 229 (Tex.Cr.App.1981). Just as evidence of flight tends to show one's guilty knowledge, *State v. Ramirez*, 98 N.M. 268, 648 P.2d 307 (1982), an attempt to deceive the police concerning the identity of defendant's fellow participants may be considered as relevant circumstantial evidence. Evidence of such an attempt tends to show a consciousness of guilt as an accomplice.

The court finds no error in the admission of extrinsic evidence to impeach defendant.

We affirm the trial court.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.