SUTIN, Judge (dissenting). {32} I acknowledge that one might question whether the peculiar and particular circumstances in this case should be covered under the criminal fraud statute. Why not leave it to civil fraud remedies? Why not, as Defendant strongly argued in her briefing and in oral argument, exclude deception in romantic relationships from criminal prosecution? Further, why not fall back on a view that the circumstances showed it only more likely than not that Mr. Kent relied on Defendant’s conduct, deceitful hiding of material information, and fraudulent misrepresentations and omissions? I am unable to follow these why-not paths. Therefore, I respectfully dissent and would affirm. {33} Looking at the totality of circumstances, particularly including Defendant’s conduct, practices, and misrepresentations (including omissions), it seems apparent that the jury strongly believed that Defendant engaged in a deliberate, willful fraudulent scheme to have access to Mr. Kent’s bank accounts. And the district court must have viewed the circumstances in a similar fashion, having imposed consecutive nine-year sentences for the two convictions for a total of eighteen years, ten of which were suspended, and having denied Defendant’s motion for a restitution hearing and imposing restitution in the amount of $53,800. {34} Further, viewed in the light most favorable to the verdict, as we must, the evidence presented at trial should be considered sufficient to support Defendant’s convictions, including the element of reliance. State v. Nichols, 2014-NMCA-040, ¶ 15, 321 P.3d 937 (stating that in our review of sufficiency-of-the evidence claims, we view the evidence in the light most favorable to the guilty verdict). I would affirm. {35} The jury was instructed, in relevant part, that to find Defendant guilty of fraud, the State was required to prove that (1) Defendant, “by any words or conduct, misrepresented a fact to [Mr.] Kent, intending to deceive or cheat” him; and (2) “[b]ecause of the misrepresentation and [Mr.] Kent’s reliance on it, [Defendant obtained over $20,000[.]” This instruction is the law of the case against which the sufficiency of the evidence supporting the jury’s verdict of guilty of fraud beyond a reasonable doubt is to be measured. See State v. Smith, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 (“Jury instructions become the law of the case against which the sufficiency of evidence is to be measured.”). {36} Mr. Kent inquired into Defendant’s marital status upon their first meeting in May 2010. Although at that time Defendant was apparently living with her boyfriend, Mr. Marquez, whom she married in January 2011, Defendant told Mr. ICent at the time only that she was not married, but that she had previously been married. {37} Within several months following that meeting, Defendant persuaded Mr. Kent to allow her access to his bank accounts, and one month before she married Mr. Marquez, Defendant persuaded Mr. Kent to add her as a co-owner of his bank accounts and to use the accounts to help D efendant with her children’s education and her “problems.” {38} Mr. Kent testified that he and Defendant started a friendship when Defendant offered to take and then began taking Mr. Kent to doctors and to hospitals. According to Mr. Kent, after a year or so, he and Defendant “liked each other.” “After a while,” Mr. Kent regarded Defendant as a close friend, not “quite a lover,” but someone in whom he had a romantic interest; and, as Mr. Kent described it, they “were both content.” {39} Beginning in October 2010, before Mr. Kent added Defendant as a co-owner of his bank accounts in December 2010, Defendant transferred money from one of Mr. Kent’s accounts into her own accounts using the online-transfer banking feature available through Mr. Kent’s bank. Defendant continued to transfer money from Mr. Kent’s accounts into her own account through mid-February 2012. Mr. Kent had given Defendant permission to effect transfers and withdrawals from his accounts, and he did not specify a limit nor did he require a specific account of what the money was to be used for. Mr. Kent also gave Defendant permission to use his debit card, and she did so. At times, Defendant paid Mr. Kent back at least some of the money that she had taken from his accounts. Mr. Kent did not know how much Defendant had paid back. {40} Defendant never told Mr. Kent that she had married Mr. Marquez; in fact, she introduced Mr. Marquez, her then-husband, to Mr. Kent in May 2011 and told Mr. Kent that Mr. Marquez was her “gay friend.” In January 2012, Mr. Marquez went to Mr. Kent’s home to tell him that he and Defendant were married; according to Mr. Marquez, Mr. Kent “was shocked” by that information. In February 2012, Mr. Kent permanently removed Defendant from his accounts. Three days later, Mr. Kent filed an “affidavit of online fraud” with his bank. {41} Given that the affidavit was admitted at trial as an exhibit, this Court sua sponte obtained a copy. The subject of the affidavit of online fraud was a series of enumerated transactions achieved by “unauthorized ATM activity},] unauthorized branch withdrawal and deposit activity[, and] unauthorized teletransfer activity” totaling several thousand dollars that occurred between September 2011 and February 2012. In handwritten responses to the questionnaire portion of the affidavit of online fraud, Mr. Kent provided the following relevant answers. In response to the question “[w]hen and how did you discover the fraud in your account?” Mr. Kent answered that “[a]round [the] 9th of February 2012, secondary acct holder’s ex-husband . . . informed me of some suspicious activity.” In response to the question “[d]o you know who might have committed the fraud?” Mr. Kent responded, “Yes- Patricia G. Garcia. ‘Girlfriend’r.]” And, in. response to the questionnaire’s request to “[e]xplain how the person that committed the fraud might have gained access to your account information},]” Mr. Kent wrote, “manipulated, convinced me to trust her . . . [.]” {42} These facts, among others in the record, must be viewed by us within the context of the evidence as a whole and considered within the totality of the circumstances while indulging all reasonable inferences in favor of the jury’s verdict of guilt beyond a reasonable doubt. State v. Graham, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285; see Gallegos, 2011-NMSC-027, ¶ 18 (rejecting a “divide-and-conquer” approach to considering the sufficiency of the evidence “whereby each piece of evidence is viewed in isolation, ignoring reasonable inferences from the totality of the circumstances that support guilt” (internal quotation marks omitted)). “When we infer, we derive a conclusion from proven facts because such considerations as experience, or history . . . have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable.” Maes, 2007-NMCA-089, ¶ 18 (internal quotation marks and citation omitted). {43} By applying the appropriate standards of review to the jury’s decision, the jury could have reasonably inferred that, by asking Defendant at the outset of their relationship whether she was married, the mid-eighty-year-old victim, whose wife had recently died, intended to learn whether Defendant was available to engage in a romantic relationship. Defendant’s response that she was not married, while .technically correct, could reasonably have been considered by the jury as disingenuous given that she was living with her boyfriend, Mr. Marquez, whom she marriedmonths later. The jury could also have reasonably inferred that Defendant intended to deceitfully present herself as romantically unattached. See Stettheimer, 1980-NMCA-023, ¶ 13 (stating that silence that is calculated to deceive may form the basis for a criminal misrepresentation). In addition, based on Defendant’s almost immediate and continuing pursuit of Mr. Kent’s money, the jury could have reasonably inferred that Defendant’s conduct was purposeful in order to eventually gain access to Mr. Kent’s money, an inference that is supported by the fact that within months of their first meeting, Defendant had direct access to Mr. Kent’s bank accounts. State v. Brenn, 2005-NMCA-121, ¶ 24, 138 N.M. 451, 121 P.3d 1050 (recognizing that “intent is usually inferred from the facts of the case” and established by circumstantial, not direct, evidence). {44} Further, the jury could have reasonably inferred that Defendant understood that Mr. Kent’s willingness to allow her access to his accounts was grounded in Mr. Kent’s impression that Defendant was his “girlfriend,” and in addition, that Defendant’s conduct showed an intent to continue her ruse so as to continue using Mr. Kent’s money, an inference that was supported by Defendant having never informed Mr. Kent of her premarriage relationship with and her marriage to Mr. Marquez and by her affirmative misrepresentation when introducing Mr. Marquez as her gay friend. Finally, based on the overall circumstances and on Mr. Kent’s affidavit of online fraud stating that Defendant gained access to his bank accounts by having “manipulated” and “convinced [him] to trust her[.]” This, combined with the use of the term “girlfriend,” in quotation marks and underlined, allowed the jury to reasonably infer that but for Defendant’s deceitful conduct intended to lead Mr. Kent to believe that she was romantically unattached, unmarried, and was his girlfriend, he would not have permitted Defendant to access his bank accounts. This inference is further supported by the fact that, although Mr. Kent always knew that Defendant was accessing his bank accounts and using his money, he stated that he did not discover the fraud on his account until Mr. Marquez informed him in February 2012 of “some suspicious activity.” From Mr. Marquez’s testimony, the jury could infer that the “suspicious activity” to which Mr. Kent referred included that Mr. Marquez was not Defendant’s gay friend but was, instead, her husband. Viewed in the context of the evidence as a whole, the jury could reasonably have concluded that but for the knowledge that Defendant’s “activity” was “suspicious” from which Mr. Kent could believe that Defendant’s intent and activity was to defraud him, Mr. Kent would not have considered Defendant’s use of his bank accounts to be fraud. {45} To hold that the evidence in this case was insufficient to prove Mr. Kent’s reliance on Defendant’s fraudulent conduct, misrepresentations, and omissions sweeps aside reasonable inferences formed by the jury in reaching its verdict. See Slade, 2014-NMCA-088, ¶ 13 (noting that “the weight and effect of the evidence, including allreasonable inferences to be drawn from both the direct and circumstantial evidence is a matter reserved for determination by the [jury]” and recognizing that this Court should not substitute its judgment for that of the jury (internal quotation marks and citation omitted)). Although “[t]he line between permissible inference and impermissible speculation is not always easy to discern[,]” see Maes, 2007-NMCA-089, ¶ 18 (internal quotation marks and citation omitted), the jury’s verdict in this case was supported by evidence and by permissible inferences drawn from that evidence, and it should be upheld. See Slade, 2014-NMCA-088, ¶ 14 (recognizing that an inference is a logical deduction from proven facts). {46} The notion that evidence of reliance was insufficient because Mr. Kent never explicitly testified that he relied upon Defendant’s conduct and statements relating to her marital status or her relationships with Mr. Marquez in allowing Defendant access to and partial ownership of his accounts is a theory that originated on appeal. Having heard the prosecution’s direct and re-direct examination of Mr. Kent, and having himself cross-examined Mr. Kent, Defendant’s trial counsel did not once raise or argue the fact that Mr. Kent had not explicitly testified that he relied on Defendant’s continuing purposeful failure to reveal her relationship with Mr. Marquez and marriage to him in allowing Defendant to access his bank accounts. {47} This, notwithstanding the fact that after the prosecution presented its case, Defendant’s counsel moved for a directed verdict on grounds having nothing to do with a failure of evidence on reliance. See State v. Barreras, 2007-NMCA-067, ¶ 3, 141 N.M. 653, 159 P.3d 1138 (“The question presented by a directed verdict motion is whether there was substantial evidence to support the charge.” (internal quotation marks and citation omitted)). It seems safe to assume that Defendant’s trial counsel inferred, as did the jury, that based under the totality of the circumstances, including in particular Defendant’s conduct and material misrepresentations and omissions, and the content of Mr. Kent’s affidavit of online fraud identifying Defendant’s marriage to Mr. Marquez as the basis for his claim, that the element of reliance was proved. {48} A goodpartofDefendant’s argument on appeal dwelled on a view that the criminal fraud statute and any reasonableness standard cannot be applied to romantic, fleeting, and fickle relationships, in that persons in such relationships can be, and often are, deceitful and unreasonable. To bring these relationships under the criminal fraud statute, Defendant argues, opens a dangerous prosecution door of criminal liability not contemplated by or intended to be covered under the criminal fraud statute. The Majority Opinion does not address this policy argument. This argument might have legs in the Legislature, but it has none in this case. {49} Because the mainstay ofthe Majority Opinion is that reliance was not proved because Mr. Kent did not explicitly say that he relied on Defendant’s misrepresentations, I have limited this dissent to that question. I have not dissected Defendant’s arguments relating to materiality, privacy, free speech, double jeopardy, and due process. Those issues need be addressed only if this case happens to return to this Court after certiorari review by our Supreme Court. In sum, the element of reliance required to prove fraud rested upon a combination of proven facts and permissible inferences, with each inference reasonably derived from evidence at trial. Accordingly, viewing the evidence and inferences in a light most favorable to the verdict, I would uphold the jury’s verdict and affirm Defendant’s convictions. JONATHAN B. SUTIN, Judge