2001-NMCA-005
18 P.3d 330
**In the Matter of SHANEACE L., a Child,**

**State of New Mexico, Plaintiff–Appellee,**

v.

**Shaneace L., a Child, Defendant–
Appellant.**

**No. 20797.**

Court of Appeals of New Mexico.

Dec. 14, 2000.

Certiorari Denied No. 26,746, Jan. 31, 2001.

Patricia A. Madrid, Attorney General, Elizabeth Blaisdell, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Judge.

{1} The children's court adjudicated Shaneace L. (Child) to be delinquent by virtue of Child's violation of NMSA 1978, § 30–20–12 (1967), which prohibits the use of a telephone to terrify, intimidate, threaten, harass, annoy, or offend another. Child made the remarks found to violate Section 30–20–12 in a three-way telephone conversation physically initiated by a friend. We affirm, concluding that Child's actions were sufficient to fall within the proscription of Section 30–20–12 and that the evidence was sufficient to support the children's court's finding of violation of the statute.

### Facts

{2} In an incident involving what Child considered "stupid high school trash talking," Child's friend, Danielle, telephoned Child and informed her that Cynthia had threatened to fight Child. Child asked Danielle for Cynthia's telephone number, but Danielle refused, saying that she would add Cynthia to their telephone call and completed the three-way call immediately.

{3} Cynthia testified that Child told her in the telephone conversation that if Cynthia did not stop seeing Anthony, Child would kill Cynthia and her baby. Cynthia was pregnant at the time of the call. Although she agreed that the conversation was "stupid trash talk," Cynthia testified that she felt threatened, harassed, and in danger. She called the police to report the conversation the same day. Child denied threatening Cynthia on the telephone.

{4} Adopting the special master's report, the children's court stated that: (1) Child,

alone or in concert with Danielle, placed the telephone call. to Cynthia, (2) Child had the intent to annoy or harass Cynthia, (3) Child threatened Cynthia with physical harm, and (4) a reasonable person in Cynthia's position would have felt so threatened. Child appeals the children's court's adjudication of delinquency for violating Section 30–20–12(A).

*Sufficiency of Evidence Concerning Whether Child Telephoned Another*

{5} Section 30–20–12(A) reads:

A. It shall be unlawful for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, to telephone another and use any obscene, lewd or profane language or suggest any lewd, criminal or lascivious act, or threaten to inflict injury or physical harm to the person or property of any person. It shall also be unlawful for any person to attempt by telephone to extort money or other thing of value from any other person, or to otherwise disturb by repeated anonymous telephone calls the peace, quiet or right of privacy of any other person at the place where the telephone call or calls were received, or to maliciously make a telephone call, whether or not conversation ensues, with intent to annoy or disturb another, or to disrupt the telecommunications of another.

The children's court's findings relate to the prohibitions contained in the first sentence of the statute.

■ {6} We first address Child's argument concerning the requirement that a violation of the first sentence of Section 30–20–12(A) requires one to "telephone another." Child contends that because Danielle connected Cynthia to an existing call between Child and Danielle as a three-way call, the State did not present sufficient evidence for the children's court to conclude that Child violated the statute. To examine Child's contention, we must determine whether one can violate Section 30–20–12(A) without physically conducting the acts which initiate a telephone call. We believe that one can.

■ {7} To determine the meaning of Section 30–20–12(A), we look to the intent of the legislature. *See State v. Arellano*, 1997–NMCA–074, ¶ 3, 123 N.M. 589, 943 P.2d 1042. We focus upon the plain meaning of the language the legislature employed as well as the object the legislature sought to accomplish. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). Statutory construction is a question of law which we review de novo. *See id.*

{8} The statute proscribes telephoning another with the specific "intent to terrify, intimidate, threaten, harass, annoy or offend" and then, during the telephone call, engaging in a particular type of prohibited conduct. Section 30–20–12(A); *see also State v. Gattis*, 105 N.M. 194, 199, 730 P.2d 497, 502 (Ct.App. 1986) (stating that Section 30–20–12 prohibits conduct; namely, the making of a telephone call).

■ {9} In the first sentence of Section 30–20–12(A), the language of the statute implies that the "intent to terrify, intimidate, threaten, harass, annoy or offend" must arise in connection with one person telephoning another person. Thus, the legislature did not intend to punish conduct that developed during the course of a telephone communication and did not occur with an improper intent formed before or at the initiation of the telephone call. *See id.*

{10} The plain statutory language leads us to the conclusion that Child did not need to physically complete the telephone call to violate the statute. Child was engaged in a telephone conversation with Danielle about Cynthia and expressed her desire, albeit indirectly, to telephone Cynthia. Child knew that Danielle was calling Cynthia and waited on the telephone line while Danielle connected Cynthia. Danielle acted as the functionary in physically connecting Cynthia to the call. She performed the physical acts on behalf of both herself and Child. Even though Danielle performed the physical act necessary to connect the call, nothing in the statute requires Child to have acted alone in making the call to Cynthia. Considering the legislative objective to protect people from the proscribed conduct, Child's actions were sufficient to fall within the legislative proscription of telephoning another. *See Rowell*, 121 N.M. at 114, 908 P.2d at 1382;

*Bustamante,* 119 N.M. at 742, 895 P.2d at 264.

### Sufficiency of Evidence Concerning Intent

■ {11} Child argues that the evidence did not establish that either she or Danielle had the requisite specific intent to violate Section 30–20–12(A). Child contends that she did not have the requisite specific intent because her intent was only to discuss comments Cynthia had made to Danielle, that she only spoke with Cynthia once by telephone, and that the content of the call, as well as the other facts, do not support an inference that she "intentionally embarked on a mission to annoy or disturb Cynthia."

■ {12} Specific intent is generally proven by circumstantial evidence. *See State v. Pisio,* 119 N.M. 252, 259, 889 P.2d 860, 867 (Ct.App.1994). Understanding the difficulty in proving the requisite statutory intent, the legislature included within Section 30–20–12 a provision that recognizes the making of a threat as prima facie evidence of the specific intent necessary to violate Section 30–20–12(A). *See* § 30–20–12(B). Cynthia's testimony that Child threatened to kill her and her baby shortly after the placing of the telephone call is sufficient evidence from which the children's court could infer that Child had the intent to annoy or harass Cynthia when Cynthia was added to the call. *See id.* (stating that the making of a threat is "prima facie evidence of intent to terrify, intimidate, threaten, harass, annoy or offend"); *State v. Laguna,* 1999–NMCA–152, ¶ 7, 128 N.M. 345, 992 P.2d 896 (stating that "[s]ubstantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion" and that on appeal the evidence is viewed in the light most favorable to the decision below); *State v. Stephens,* 111 N.M. 543, 547, 807 P.2d 241, 245 (Ct.App.1991) (stating that threats in the context of Section 30–20–12(A) include "threats of wrongful injury to person or property" and therefore such threats amount to "threats of criminal or tortious misconduct").

■ {13} As to Danielle's intent, the children's court did not find that Child acted as an accessory to Danielle in violating Section 30–20–12(A). As a result, Danielle's specific intent in placing the three-way call is not relevant to our analysis. Child's testimony was sufficient to raise a reasonable inference that Danielle intended to place the three-way call to Cynthia. Although Section 30–20–12(A) requires a specific intent on the part of the perpetrator when the call is made, it does not require more than a general criminal intent to place the call. Evidence is sufficient to establish a general criminal intent when it demonstrates beyond a reasonable doubt that a person purposely performed the act in question. *See* UJI 14–141 NMRA 2000.

{14} Child's testimony was also sufficient to support an inference that Child shared Danielle's general intent to initiate the call. Child violated Section 30–20–12(A) because she joined with Danielle in initiating the call to Cynthia and because Child had the specific intent to annoy or harass Cynthia and Child threatened Cynthia during the telephone call.

### Sufficiency of Evidence Concerning Victim's Understanding

■ {15} Child additionally contends that the evidence was insufficient to support her adjudication because Cynthia testified that she was "not scared of" Child and did not believe that Child would follow through on her threat. But Cynthia also testified that she felt threatened and harassed and felt that she was in danger. This testimony was substantial evidence to support the children's court's findings. *See In re Ernesto M., Jr.,* 1996–NMCA–039, ¶ 15, 121 N.M. 562, 915 P.2d 318 ("The question is whether the children's court's decision is supported by substantial evidence, not whether the court could have reached a different conclusion.").

### Conclusion

{16} We affirm the children's court's delinquency adjudication.

{17} IT IS SO ORDERED.

BUSTAMANTE and SUTIN, JJ., concur.