**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMSC-034

Filing Date: June 22, 2009

Docket No. 31,010

STATE OF NEW MEXICO,

      **Plaintiff-Respondent,**

v.

BRIGETTE TROSSMAN,

      **Defendant-Petitioner.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen Bridgforth, District Judge**

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Max Shepherd, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Chief Justice.**

**{1}**    Defendant Brigette Trossman was convicted of negligently permitting child abuse by endangerment, contrary to NMSA 1978, Section 30-6-1(D) (2004, prior to amendments in 2005),[1] after she was arrested in a house in Chapparal, New Mexico, where chemicals and

---

      [1]Throughout this opinion, our citations refer to Section 30-6-1 as it appeared prior to the amendments in 2005. As a result, we refer to current Section 30-6-1(I) as Section 30-

equipment involved with methamphetamine production were found and the evidence suggested that her child lived there with her. In addition to the normal instruction for negligently permitting child abuse, Jury Instruction No. 4 provided that:

> Evidence that demonstrates that a child has been knowingly, intentionally or negligently allowed to enter or remain in a motor vehicle, building or any other premises that contains chemicals and equipment used or intended for use in the manufacture of a controlled substance may be deemed evidence of abuse of the child.

Defendant appealed her conviction to the Court of Appeals, arguing (1) that this instruction undermined the jury's responsibility to find all of the essential elements of her charge, and (2) that there was insufficient evidence to support her conviction. *State v. Trossman*, No. 26,576, mem. op. at 2 (N.M. Ct. App. Feb. 28, 2008). The Court of Appeals rejected these arguments, *id*., and Defendant sought a writ of certiorari from this Court. The Court granted certiorari on both issues. *State v. Trossman*, 2008-NMCERT-004, 144 N.M. 48, 183 P.3d 933 (table).

**{2}**     We reverse the Court of Appeals on both issues. First, we hold that Jury Instruction No. 4, which constituted an evidentiary presumption under our Rules of Evidence, was erroneous because a reasonable juror could have concluded that he or she was not required to find the essential element of endangerment beyond a reasonable doubt. Second, we conclude that there was insufficient evidence to support Defendant's conviction of child abuse. Defendant's conviction is therefore vacated.

**BACKGROUND**

**{3}**     The facts in this case are not in dispute. Responding to reports of suspicious purchases of pseudoephedrine, police followed Billy Glenn, later a co-defendant in this case, as he and several unidentified adults made additional purchases of ephedrine and matches, both possible methamphetamine precursors. Glenn was observed entering a house carrying several bags. Police watched the house that evening and then left for approximately thirty-six hours, during which time they obtained a search warrant. When the warrant was executed, police apprehended Defendant, Glenn, and one other female. Inside the house police found fifty-three items consistent with the presence of a methamphetamine lab.[2] One

---

6-1(F). We also note that Defendant's indictment and judgment incorrectly refer to the child abuse by endangerment provision as being found at Section 30-6-1(C) instead of Section 30-6-1(D).

[2]As explicitly described in testimony, these included two metal cans of acetone; one gallon and a separate quart of denatured alcohol; baggies; scales; a mason jar with a bi-layered liquid; a heating mantle; a mason jar with a reddish white powdery substance; Red

officer also observed what appeared to be a child's room, although he admitted during cross-examination that he had no personal knowledge about who lived there or whether a child had been present at any particular time. However, a social worker who took jurisdiction over Defendant's child after the raid later testified that Defendant had told her that Defendant's child lived at the house. The social worker also testified that the child had been absent on the night before the raid, and that she had not asked whether the child had been absent on any previous nights.

**{4}** Defendant was charged with violating Section 30-6-1, which at that time provided in relevant part that:

> D. Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:
>
> > (1) placed in a situation that may endanger the child's life or health . . . .
>
> F. Evidence that demonstrates that a child has been knowingly, intentionally or negligently allowed to enter or remain in a motor vehicle, building or any other premises that contains chemicals and equipment used or intended for use in the manufacture of a controlled substance shall be deemed prima facie evidence of abuse of the child.

**{5}** At the end of Defendant's trial, Defendant moved for a directed verdict on the grounds that there was no evidence "to show that the child was in the proximity or could have been exposed to [dangerous chemicals and equipment]." The motion was denied. The parties proceeded to discuss proposed jury instructions and agreed on an instruction on negligently permitting child abuse under Section 30-6-1(D) based on UJI 14-605 NMRA that read as follows:

> INSTRUCTION NO. 3[.]
>
> [Defendant] has been charged with negligently permitting child abuse which did not result in death or great bodily harm. For you to find [Defendant] guilty of child abuse which did not result in death or great bodily harm, as charged in the Grand Jury Indictment, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

---

Devil lye; a plastic sports bottle; a Pyrex cooking dish; coffee filters; iodine; empty blister packs for pseudoephedrine or ephedrine (but apparently no pills); hydrogen peroxide; a cooler; and stained gloves.

1. [Defendant] permitted [her child] to be placed in a situation which endangered the life or health of [her child];

2. The defendant acted with reckless disregard. To find that [Defendant] acted with reckless disregard, you must find that [Defendant] knew or should have known the defendant's conduct created a substantial and foreseeable risk, the defendant disregarded that risk and the defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of [her child][;]

3. [Defendant] was a parent, guardian or custodian of the child, or the defendant had accepted responsibility for the child's welfare;

4. [Defendant's child] was under the age of 18;

5. This happened in New Mexico on or about August 12, 2004.

In addition, the State proposed an instruction with the exact wording of Section 30-6-1(F).[3] The attorneys for Defendant and her co-defendant objected that such an instruction violated their clients' rights to due process because "innocent activity could be construed to meet the elements of this statute[;]" that the instruction was improper because it could not yet be found in the UJI; and that the instruction would prevent the jury from finding all of the required elements of child abuse. The judge suggested modifications to the language of Section 30-6-1(F), and notwithstanding renewed objections, the jury was eventually instructed on the judge's modified version of the statute:

INSTRUCTION NO. 4.

Evidence that demonstrates that a child has been knowingly, intentionally or negligently allowed to enter or remain in a motor vehicle, building or any other premises that contains chemicals and equipment used or intended for use in the manufacture of a controlled substance ~~shall~~ [may] be deemed ~~prima facie~~ evidence of abuse of the child.

Defendant was convicted.

{6} Defendant appealed, continuing to claim that the instruction was flawed and the evidence was insufficient to convict her. *Trossman*, No. 26,576, mem. op. at 2. The Court of Appeals affirmed the conviction. *Id.* at 8. First, the Court held that Jury Instruction No. 4 was proper because it "simply gave an alternative definition of what can constitute placing

---

[3]The record does not include this proposed instruction, but we are able to infer its contents from the discussion between the parties in the transcript.

a child in a dangerous situation. It did not mandate a conviction . . . ." *Id.* Second, the Court held that the evidence was sufficient to support Defendant's conviction because there was testimony that her child lived in the house and that being present around the chemicals was dangerous. *Id.* at 5-6. We reverse the Court of Appeals and vacate Defendant's conviction.

**DISCUSSION**

**I.      JURY INSTRUCTION NO. 4 COULD HAVE CONFUSED OR MISDIRECTED A REASONABLE JUROR**

**{7}**      Defendant argues that Jury Instruction No. 4 "mandated a conviction" of child abuse because it "took away an element from the jury's determination–the element of whether the defendant's actions of having a variety of lawful materials in her house amounted to child abuse." In support of this argument, Defendant cites to a series of cases including *State v. Parish*, 118 N.M. 39, 878 P.2d 988 (1994), which concern the failure of trial courts to instruct juries on all of the essential elements of the crime charged. The State responds that since the Legislature "has gone to the trouble of providing a specific definition of a type of child abuse by endangerment" under Section 30-6-1(F), it was not error for the trial court to instruct on that basis. The State contends that Jury Instruction No. 4 did nothing more than create "a permissive inference," which did not violate Defendant's rights because it was rational for the jury to "make . . . the inference set forth in the challenged instruction, i.e., that allowing a child to be in a methamphetamine house is inherently dangerous to the child's health and well being." The Court of Appeals agreed with the State, holding that Section 30-6-1(F) created "an alternative definition" of child abuse and that nothing prevented the jury from being instructed on that basis, particularly given the alterations made by the trial court. *Trossman*, No. 26,576, mem. op. at 8.

**{8}**      In *Parish*, 118 N.M. at 41-42, 878 P.2d at 990-91, we explained that jury instructions can be defective in three ways: (1) they can be facially erroneous, requiring reversal; (2) they can be vague, in which case the court must "evaluate whether another part of the jury instructions satisfactorily cures the ambiguity[;]" and (3) they can be contradictory, requiring reversal because "there is no way to determine whether the jury followed the correct or the incorrect instruction." Whatever the case, the ultimate concern of the reviewing court must be whether "a reasonable juror would have been confused or misdirected." *Id.* at 42, 878 P.2d at 991. To determine whether Jury Instruction No. 4 was erroneous under the standards enunciated in *Parish*, we must first resolve the conflict between the parties regarding the import of Section 30-6-1(F).

**{9}**      Rule 11-302(A) NMRA provides that "in criminal cases, presumptions against an accused, recognized at common law or created by statute, *including statutory provisions that certain facts are prima facie evidence of other facts or of guilt*, are governed by this rule." (Emphasis added.) A presumption may be instructed to the jury in a criminal trial, subject to certain restrictions considered later in this opinion. Rule 11-302(C). In the most general

terms, "a presumption is a standardized practice, under which certain facts [the basic facts] are held to call for uniform treatment with respect to their effect as proof of other facts [the presumed facts]." 2 Kenneth S. Broun, *McCormick on Evidence* § 342, at 495 (6th ed. 2006). At first glance, the basic facts under Section 30-6-1(F) appear to be both (1) the act of allowing a child "to enter or remain in a motor vehicle, building or any other premises that contains chemicals and equipment used or intended for use in the manufacture of a controlled substance", and (2) the mens rea standard "knowingly, intentionally or negligently." These basic facts are given a certain uniform effect (they are "prima facie evidence") regarding the presumed fact of child abuse under Section 30-6-1(D).

**{10}** A careful reading of Sections 30-6-1(D) and (F) requires us to slightly modify this conclusion, however. First, we note that the acts described in Section 30-6-1(F) are consistent with only one theory of child abuse: endangerment under Section 30-6-1(D)(1). Sections 30-6-1(D)(2) and (3) create the other possible forms of child abuse when a child is "tortured, cruelly confined or cruelly punished" or "exposed to the inclemency of the weather[,]" respectively. Second, we observe that the mens rea standard of Section 30-6-1(F) ("knowingly, intentionally or negligently") is nothing more than a restatement of the mens rea standard under Section 30-6-1(D). Given these considerations, we hold that the presumption created by Section 30-6-1(F) can only be understood to allow the basic fact of allowing a child "to enter or remain in a motor vehicle, building or any other premises that contains chemicals and equipment used or intended for use in the manufacture of a controlled substance" to serve as evidence of the essential element of endangerment under Section 30-6-1(D)(1), when this theory of child abuse is at issue. *See* UJI 14-605.

**{11}** Rule 11-302 also specifies the effect that the basic facts under Section 30-6-1(F) should have regarding the presumed fact of endangerment. The jury may, but is not required to, infer the presumed fact upon evidence of the basic facts; in other words, "[t]he court is not authorized to direct the jury to find a presumed fact against the accused[,]" if the jury finds the basic facts. Rule 11-302(B); *see also* Rule 11-302(C). "This provision incorporates the constitutional requirement that presumptions not be conclusive in criminal cases even if unrebutted." *State v. Matamoros*, 89 N.M. 125, 127, 547 P.2d 1167, 1169 (Ct. App. 1976) (internal quotation marks and citation omitted); *see, e.g.*, *State v. Jones*, 88 N.M. 110, 112, 537 P.2d 1006, 1008 (Ct. App. 1975) (concluding that an instruction was impermissibly mandatory when it read that "the requisite knowledge or belief that the property has been stolen *is presumed* in the case of an individual who is found in possession or control of property stolen from two or more persons on separate occasions." (internal quotation marks omitted) (emphasis added)). As the United States Supreme Court has explained, to satisfy the mandates of due process, a presumption "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *County Court of Ulster County v. Allen*, 442 U.S. 140, 156 (1979). What our criminal rules refer to as a presumption is more properly termed a permissive inference, the purpose of which "is to guide the jury by highlighting the propriety of drawing a factual inference they might otherwise be naturally less likely to draw." 1 Michael H. Graham, *Handbook of Federal Evidence* § 303:4, at 296 (6th ed. 2006);

*see also Jones*, 88 N.M. at 113, 537 P.2d at 1009 ("The effect of [the predecessor of Rule 11-302] . . . is to abolish 'true' presumptions in criminal cases.").

**{12}**    Rule 11-302(C) guides the trial court in assuring that a jury instruction is given effect only as a permissive inference:

> Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so.  In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court shall instruct the jury that its existence must, on all the evidence, be proved beyond a reasonable doubt.

UJI 14-5061 NMRA puts the mandates of Rule 11-302 into a specific form that "shall be given when the state relies upon a statutory 'presumption' to prove an element of the crime or when an element is inferred ('implied') from certain facts."  UJI 14-5061 Use Note. Pursuant to our reading of the statute, such an instruction based on UJI 14-5061 could have been given in addition to an instruction on the essential elements of child abuse by endangerment[4] and should have read as follows:

> Proof that [Defendant] permitted [her child] to be placed in a situation which endangered the life or health of [her child] is an essential element of negligently permitting child abuse as defined elsewhere in these instructions. The burden is on the state to prove that [Defendant] permitted [her child] to be placed in a situation which endangered the life or health of child beyond a reasonable doubt.
>
> In this case if you find that it has been proved that [Defendant] allowed [her child] to enter or remain in a motor vehicle, building or any other premises that contains chemicals and equipment used or intended for use in the manufacture of a controlled substance, you may but are not required to find that it has been proved that [Defendant] permitted [her child] to be placed in a situation which endangered the life or health of [her child]. You must consider all of the evidence in making your determination.  In order to find the defendant guilty of negligently permitting child abuse, you must be convinced beyond a reasonable doubt that the defendant permitted [her child] to be placed in a situation which endangered the life or health of [her child].

---

[4]For example, Jury Instruction No. 3 in Defendant's case, *supra*.  *See also* UJI 14-605.

**{13}** Although the trial judge made several well-considered changes to the language of Section 30-6-1(F) before instructing the jury–for instance, changing "shall" to "may"–Jury Instruction No. 4 entirely lacked the marked emphasis placed by Rule 11-302 and UJI 14-5061 on the necessity that the jury find the essential element of endangerment beyond a reasonable doubt. Thus, while we disagree with Defendant's characterization of Jury Instruction No. 4 as mandating a finding of guilt, we believe that the risk of confusion caused by this instruction is equally troubling. *See State v. Montano*, 1999-NMCA-023, ¶ 18, 126 N.M. 609, 973 P.2d 861 (reversing a conviction for aggravated battery when a jury instruction implied that the jury need not find that the alleged weapon could have caused death or serious injury and was therefore ambiguous). We perceive a twofold risk under Jury Instruction No. 4: (1) the jury might have understood it to supplant the reasonable doubt standard; and (2) the jury might not have understood that the presumption did not relieve the jury of the necessity of finding the essential element of endangerment.[5] *See Ulster County*, 442 U.S. at 156.

**{14}** Neither can we conclude that other instructions cured the error. *See State v. Crosby*, 26 N.M. 318, 324, 191 P. 1079, 1081 (1920) ("If this instruction were ambiguous and incomplete, and also capable of another, different, and correct interpretation . . . it might then be cured by the subsequent instruction . . . ."). Although Jury Instruction No. 2 provided that "[t]he burden is always on the state to prove guilt beyond a reasonable doubt[,]" it did not explain what it was, exactly, that the jury must find beyond a reasonable doubt. If instructed correctly per UJI 14-5061, Jury Instruction No. 4 would have explained that "[i]n order to find the defendant guilty of negligently permitting child abuse, you must be convinced beyond a reasonable doubt *that the defendant permitted [her child] to be placed in a situation which endangered the life or health of [her child]*" (emphasis added). It is the ultimate fact of endangerment that must be proven beyond a reasonable doubt–not just the basic facts from which the inference may be drawn. We must vacate Defendant's conviction where there was a possibility that the jury could have convicted her without finding each of the elements of the crime charged beyond a reasonable doubt. *See Parish*, 118 N.M. at 44-46, 878 P.2d at 993-95 (reversing a conviction when jury instructions failed to place on the

---

[5]In fact, there was a third risk as well. As we noted above, the mens rea standard in Section 30-6-1(F) is merely a repetition of the mens rea standard in Section 30-6-1(D), and as such would create a needless redundancy if–as happened in the case at bar–it were instructed in the presumption as well as in the normal elements of child abuse. In addition, by including the "knowingly, intentionally or negligently" standard verbatim in Jury Instruction No. 4, the trial court may have violated our holdings requiring criminal negligence in child abuse cases. *See, e.g.*, *State v. Mascarenas*, 2000-NMSC-017, ¶¶ 12, 16, 129 N.M. 230, 4 P.3d 1221 (holding that because criminal negligence is required to prove child abuse, an instruction incorporating both the words "negligently" and "reckless disregard" resulted "in the distinct possibility of juror confusion as to the mens rea necessary for conviction" and mandated reversal (internal quotation marks and citation omitted)). However, this issue is not before us.

State the burden of proving that the defendant did not act in self-defense).

## II. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT'S CONVICTION

**{15}** Defendant claims that the evidence presented at trial was insufficient to support her conviction because it did not show that her child was endangered, since he "was not in the residence at the time that any manufacture of any controlled substance took place." Defendant argues that our review must employ the criterion of endangerment set forth by our child abuse precedents, that endangered children must be "exposed to a substantial risk to their health." *State v. Trujillo*, 2002-NMCA-100, ¶ 21, 132 N.M. 649, 53 P.3d 909. The State argues that Section 30-6-1(F) creates its own substantive standard that obviates the need to determine whether there was sufficient evidence of endangerment, as defined by our precedents. Moreover, the State argues that even under the endangerment standard, testimony established the child's presence in the house and the dangers that would have resulted from being in the presence of the seized chemicals. The Court of Appeals concluded the jury could infer that Defendant's child was endangered because dangerous chemicals were stored in the house where he lived. *Trossman*, No. 26,576, mem. op. at 5-6.

**{16}** To decide whether there was sufficient evidence, we conduct the following analysis: "[i]nitially, the evidence is viewed in the light most favorable to the verdict. Then the appellate court must make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Lopez*, 2008-NMCA-111, ¶ 14, 144 N.M. 705, 191 P.3d 563 (internal quotation marks and citation omitted). We "indulge all permissible inferences in favor of upholding the verdict." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). Also, in reviewing such cases for sufficient evidence, we must not "parse[] the testimony and view[] the verdict only in light of the probative value of individual pieces of evidence," but rather "view the evidence as a whole." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285.

**{17}** As an initial matter, we must settle the debate between the parties over whether the sufficiency of the evidence in this case should be decided, as Defendant urges, under traditional endangerment standards or, as the State argues, solely with reference to Section 30-6-1(F). We concede that the State's position has, on its face, a certain appeal. Section 30-6-1(F) is framed in terms of "prima facie evidence." In general legal parlance, "prima facie evidence" is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." Black's Law Dictionary 598 (8th ed. 2004); *see also Matamoros*, 89 N.M. at 127, 547 P.2d at 1169. The Court of Appeals applied this definition to a provision similar to Section 30-6-1(F) in *In re Shaneace L.*, 2001-NMCA-005, ¶ 12, 130 N.M. 89, 18 P.3d 330. In *Shaneace L.*, the Court reviewed the defendant's conviction under NMSA 1978, Section 30-20-12 (1967) ("Use of telephone to terrify, intimidate, threaten, harass, annoy or offend") for sufficiency of the evidence in light of Section 30-20-12(B), which provided that "[t]he use of obscene, lewd or profane language or the making of a

threat or statement . . . shall be prima facie evidence of intent to terrify, intimidate, threaten, harass, annoy or offend." 2001-NMCA-005, ¶ 12. Unlike the case at bar, in *Shaneace L.*, no instruction was given on the basis of this provision. The Court of Appeals held that Section 30-20-12(B) was the Legislature's way of mitigating "the difficulty in proving the requisite statutory intent[.]" *Id.* As such, the Court of Appeals concluded that "testimony that Child threatened to kill [the victim] and her baby shortly after the placing of the telephone call is sufficient evidence from which the children's court could infer that Child had the intent to annoy or harass [the victim]." *Id.* In short, the Court viewed the "prima facie evidence" provision as creating an evidentiary standard for use in reviewing claims of insufficient evidence. If we were to apply this reasoning to the case at bar, we would hold that there was sufficient evidence of endangerment if a rational jury could have found the *basic facts* described in Section 30-6-1(F) beyond a reasonable doubt. This would permit a finding of endangerment when, for example, a child was allowed to enter and remain in a house containing iodine that the child's parent planned to use in methamphetamine production, even if the situation would not qualify as endangerment under our precedents.

{18}    We cannot adopt this reasoning. To interpret Section 30-6-1(F) in accordance with *Shaneace L.* would bring us into conflict with our specific rule on presumptions. Rule 11-302(B) requires that:

> When the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court may submit the question of guilt or of the existence of the presumed fact to the jury, if, but only if, a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt.

When the Legislature has directed that one or more basic facts may be considered prima facie evidence of a presumed fact, the trial court must test the sufficiency of the evidence of the *presumed fact* before the jury may be instructed that the presumed fact may be inferred from the basic fact or facts. In Defendant's case, Rule 11-302(B) requires that the trial court be satisfied that sufficient evidence has been presented of the child's *endangerment* before giving an instruction in accordance with UJI 14-5061. As discussed above, this requirement assures that the presumption does not "undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Ulster County*, 442 U.S. at 156. An evidentiary presumption does not change the State's burden to establish the essential elements of the crime without reference to the presumption itself. Accordingly, for the purposes of our review, the evidence must have been sufficient to prove endangerment under Section 30-6-1(D)(1).

{19}    For this reason, to the extent that *Shaneace L.* suggests that a statutory provision like Section 30-6-1(F), making a basic fact prima facie evidence of a presumed fact, is a standard for deciding the sufficiency of the evidence, it is overruled. However, we have no quarrel with the ultimate outcome of *Shaneace L.*; there was certainly sufficient evidence of intent in that case, not because of the presumption, but because of the natural inference that flows

10

from threatening behavior to the intent to annoy or harass. *See, e.g.*, *State v. Silva*, 2008-NMSC-051, ¶ 18, 144 N.M. 815, 192 P.3d 1192 (observing that "[i]ntent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence" (internal quotation marks and citation omitted)).

**{20}** Viewing the evidence as a whole under the endangerment standard, we are compelled to agree with Defendant that there was insufficient evidence to support her conviction. We have held that in creating the crime of child abuse by endangerment, "the Legislature did not intend to criminalize conduct creating a mere possibility, however remote, that harm may result to a child." *Graham*, 2005-NMSC-004, ¶ 9 (internal quotation marks and citations omitted).

> In making this offense a third degree felony, the legislature intended to address conduct with potentially serious consequences to the life or health of a child. The coupling in the statute of the word "health" with the word "life" suggests to us that the legislature intended to address situations in which children are exposed to a substantial risk to their health.

*Trujillo*, 2002-NMCA-100, ¶ 21; *see also* UJI 14-603 NMRA (requiring a "substantial and foreseeable risk" to the child). In *State v. Jensen*, 2006-NMSC-045, ¶ 10, 140 N.M. 416, 143 P.3d 178, we explained that "[p]roof of child endangerment is sufficient for a conviction if a defendant places a child within the zone of danger and physically close to an inherently dangerous situation."

**{21}** Applying the substantial and foreseeable risk standard, our courts have found sufficient evidence of endangerment when the defendant invited a minor to drink alcohol, view pornography, and eat possibly tainted food in a filthy house, *id.* ¶¶ 15-16; when marijuana, a controlled substance determined by the Legislature to be hazardous, had been left by the defendant in his house in locations where children had been playing just prior to its discovery and in a baby's crib, *Graham*, 2005-NMSC-004, ¶¶ 10-12; when the defendant drove drunk and in a dangerous manner with her children in the car, *State v. Castañeda*, 2001-NMCA-052, ¶ 22, 130 N.M. 679, 30 P.3d 368; and when the defendant pointed a gun at a woman and threatened to kill her while her daughter stood behind her, *State v. McGruder*, 1997-NMSC-023, ¶¶ 37-38, 123 N.M. 302, 940 P.2d 150. Our courts have found insufficient evidence of child abuse by endangerment when the defendant had allowed a stroller to roll in front of him beyond his reach and it tipped over, injuring the child, *State v. Massengill*, 2003-NMCA-024, ¶ 47, 133 N.M. 263, 62 P.3d 354; when the defendant assaulted the child's mother while the child was in a different part of the house, *Trujillo*, 2002-NMCA-100, ¶¶ 19-20, 132 N.M. 649, 53 P.3d 909; and when the defendant had left his child in a car with the child's mother, ten to fifteen feet from the defendant's drug transaction, *State v. Roybal*, 115 N.M. 27, 34, 846 P.2d 333, 340 (Ct. App. 1992). These cases clearly require the State to prove the child's presence in a situation where harm was both probable and sufficiently grave to justify a criminal sanction.

11

**{22}**    In this case, we are concerned with the lack of evidence that establishes the presence of the child in the home on or about August 12, 2004 and under conditions that could have endangered his life or health.  The evidence supporting the jury's verdict is as follows.  A social worker testified that Defendant told her that the child "lived with [Defendant]" at the house in Chapparal, but could provide no specific dates that the child was present at the house, and in fact stated that the child was not present the night before the raid.  A police officer testified that he had seen what appeared to be a child's room in the house but conceded that he had no personal knowledge about who lived in the room or when he or she had been present.  The mere fact that the child normally resided in the home is insufficient.  The Legislature requires actual presence, as evidenced by the basic facts detailed in Section 30-6-1(F)–that the child be allowed to *enter or remain* in the building at the relevant time.  Similarly, every New Mexico case cited above has as its premise that the child was actually present when the dangerous situation occurred.

**{23}**    In addition, our cases require a greater showing of risk of harm.  Here, there was testimony that on the day of the raid, the house contained numerous items that were most likely used for methamphetamine production in the house.  However, there was no evidence regarding when any of the items had been taken into the house, with the possible exception of some matches, pseudoephedrine, and ephedrine, which testimony implied may have been taken into the house about thirty-six hours before the raid.  Police testified that some methamphetamine labs can be moved quickly from place to place and that others cannot, but did not specify into which category the lab in the house fell.  Witnesses testified that some of the materials found in the house could be dangerous:  iodine could result in burns, lye is a carcinogen, and organic solvents like acetone could be dangerous.  However, there was no evidence that any of these legal, household chemicals were actually stored in a manner that could endanger a child in the house.  There was ample evidence that the process of creating methamphetamine is extremely hazardous, releasing toxic gases and creating the potential for fires.  However, there was no evidence regarding when or how often methamphetamine production had occurred in the house.  Indeed, testimony suggested that this process takes only six to eight hours.  There was evidence that, because of the hazards inherent in methamphetamine production and the likelihood that an entire house used in processing methamphetamine could become contaminated, police typically use fully contained suits to enter houses containing methamphetamine labs.  However, there was no evidence that the house in Chapparal was actually contaminated.  Finally, we note that no methamphetamine was found in the house.

**{24}**    Viewing the evidence as a whole, we conclude that there was not sufficient evidence to support a finding of child abuse by endangerment.  We concede that if the State had produced evidence that Defendant had allowed her child to be present during the process of methamphetamine production, or had stored such dangerous chemicals in ways that could have harmed her child, we would be highly inclined, in light of the precedents cited above, to conclude that there was sufficient evidence that she placed her child's life or health at risk.  *Cf. Graham*, 2005-NMSC-004, ¶¶ 10-12 (finding sufficient evidence of endangerment when the defendant had allowed children to play in the vicinity of marijuana and marijuana was

12

found in a child's crib).  In the case before us, however, the State failed to provide any evidence whatsoever that Defendant allowed her child to be present in the house under hazardous conditions.  Although a jury is certainly entitled to draw reasonable conclusions from the circumstantial evidence produced at trial, *see id.* ¶ 10, it must not be left to speculate in the absence of proof.  *See Silva*, 2008-NMSC-051, ¶ 19 (reversing a conviction of tampering with evidence when the State showed that the police had failed to find a weapon that was previously in the defendant's possession, and did not produce any evidence that defendant had acted in any way to hide or destroy the weapon).  In *State v. Leal*, 104 N.M. 506, 510, 723 P.2d 977, 981 (Ct. App. 1986), the Court of Appeals overturned a conviction for negligently permitting child abuse when the child's injuries occurred at Defendant's residence within twelve to eighteen hours before the child was taken to the hospital, but no specific evidence placed Defendant at the scene when the violence was perpetrated by another.  We believe that, just as "[t]he fact that an injury occurred is not sufficient to prove this defendant guilty[,]" *id.*, in the case at bar, the likelihood that a hazardous activity probably took place in the house at some time is not sufficient to prove Defendant guilty of allowing her child to be present while it took place.  There was no testimony that placed Defendant's child at the house under any hazardous conditions or suggested that hazardous conditions must have been ongoing in such a way that the jury could have judged the probability that the child must have encountered them at some point.  Similarly, there was no testimony that indicated the house was actually contaminated or chemicals were stored in such a way that the child's presence at any time would have been dangerous.  Even if the jury could have concluded that at some point over the months prior to the arrest, Defendant's child was likely to have been endangered by Defendant's activities, it would not have been entitled to convict; the jury instructions only charged Defendant for conduct occurring "on or about August 12, 2004."  The State simply did not present any evidence to allow the jury to draw the specific inferences required for it to find endangerment.  For these reasons, we find that there was insufficient evidence to support Defendant's conviction of child abuse.

## CONCLUSION

{25}   The Court of Appeals' opinion is reversed.  Because the jury was instructed improperly and because there was insufficient evidence to convict Defendant, her conviction is vacated.

{26}   **IT IS SO ORDERED.**

 

 

**EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**

**PATRICIO M. SERNA, Justice**

---

**RICHARD C. BOSSON, Justice**

---

**CHARLES W. DANIELS, Justice**

**MAES, Justice (specially concurring).**

**MAES, Justice (specially concurring).**

**{27}**    I concur in the majority opinion. I write separately, however, because I disagree with the majority that "[t]he mere fact that the child normally resided in the home is insufficient" to prove that the child was permitted "to enter or remain" in the home pursuant to NMSA 1978, Section 30-6-1(F) (2004, prior to amendments in 2005).  I believe that, absent evidence to the contrary, it is reasonable to infer that a ten-year-old child sleeps in his primary residence and, therefore, the evidence in the present case was sufficient to prove that Defendant permitted the child to enter or remain in the home on the night of August 10, 2004.  Nonetheless, for the reasons explained in the majority opinion, the evidence was insufficient to prove that the chemicals or equipment subsequently found in the home on the morning of August 12 posed a risk of danger to the child's life or health approximately two days earlier,  on the night of August 10.  As aptly stated by the majority, "in the case at bar, the likelihood that a hazardous activity probably took place in the house at some time is not sufficient to prove Defendant guilty of allowing her child to be present while it took place." Accordingly, the evidence was insufficient to support Defendant's conviction of negligently permitting child abuse contrary to Section 30-6-1(D).

---

**PETRA JIMENEZ MAES, Justice**

**Topic Index for** *State v. Trossman***, No. 31,010**

| AE | APPEAL AND ERROR |
|---|---|
| AE-AR | Appellate Review |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |

| CL | CRIMINAL LAW |
|---|---|
| CL-CN | Child Abuse and Neglect |
| CL-CL | Controlled Substances |

| CA | CRIMINAL PROCEDURE |
|---|---|

CA-BP          Burden of Proof
CA-JI          Jury Instructions
CA-SF          Standard of Proof
CA-SE          Substantial or Sufficient Evidence

**EV**          **EVIDENCE**

EV-PS          Presumptions
EV-SS          Substantial or Sufficient Evidence

**JI**          **JURY INSTRUCTIONS**

JI-CJ          Criminal Jury Instructions
JI-IJ          Improper Jury Instructions