The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **July 31, 2023**

**No. A-1-CA-39691**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DAHN LEIDY a/k/a DAHN R. LEIDY,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Bruce C. Fox, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**ATTREP, Chief Judge.**

{1} Defendant Dahn Leidy was tried on multiple alternative theories of child abuse relating to injuries sustained by her son. The jury acquitted Defendant under the State's principal theory of child abuse—that she inflicted her son's injuries—but convicted her under one of the State's alternatives—that she permitted her son to be endangered. Defendant appeals her two convictions for child abuse by endangerment (resulting in great bodily injury) and her one conviction for child abuse by endangerment (no great bodily injury). *See* NMSA 1978, § 30-6-1(D)(1), (E) (2009). Among other claims of error, including instructional error, Defendant challenges the sufficiency of the evidence supporting her convictions. Because there is insufficient evidence to sustain Defendant's convictions under the alternative upon which the jury convicted her, we reverse Defendant's convictions.[1]

---

[1]In light of our reversal on sufficiency grounds, retrial is barred by double jeopardy, and, accordingly, we need not reach Defendant's other claims of error. *See State v. Garcia*, 2021-NMSC-019, ¶ 24, 488 P.3d 585 (concluding it was unnecessary to reach the defendant's argument that instructional error occurred because retrial was barred by double jeopardy on sufficiency of the evidence grounds); *State v. Leal*, 1986-NMCA-075, ¶ 2, 104 N.M. 506, 723 P.2d 977 (providing that this Court would not address the defendant's claim of instructional error because there was insufficient evidence to sustain the defendant's child abuse conviction).

## BACKGROUND

{2}     Emergency responders, including law enforcement officers, were called to Defendant's apartment following a report by her boyfriend that she had threatened to kill her eighteen-month-old son, E.R., and herself. E.R. was in visible distress when emergency responders arrived. He was transported by ambulance to the hospital where staff observed injuries potentially indicative of child abuse: bruising on different parts of his body, a broken left arm, and a liver laceration.

{3}     The State's witnesses at trial included Defendant's boyfriend and his teenage son, the only other people at Defendant's apartment during the time that, according to the State, E.R. was injured. The boyfriend was charged with recklessly permitting child abuse. As part of a plea agreement requiring the boyfriend to testify against Defendant at trial, he pled guilty to failing to report child abuse. The State also called a medical expert who was unable to confirm that any of E.R.'s injuries occurred on the day he was taken to the hospital. Defendant did not testify at trial, but her interview with law enforcement was played for the jury. Defendant denied hurting E.R. or knowing how he was injured.

{4}     Defendant was tried on three counts of child abuse: two counts of child abuse resulting in great bodily harm, corresponding to E.R.'s liver injury and broken arm, and one count of child abuse not resulting in great bodily harm, corresponding to E.R.'s bruises. *See* § 30-6-1(E). Each count was prosecuted on four alternatives—

2

that the abuse was (1) recklessly caused by endangerment, § 30-6-1(D)(1); (2) recklessly permitted by endangerment, *id.*; (3) recklessly caused by torture, cruel confinement, or cruel punishment, § 30-6-1(D)(2); and (4) recklessly permitted by torture, cruel confinement, or cruel punishment, *id.* The jury instructions did not define "caused" or "permitted." During closing, the State described the difference as follows: for those instructions in which it was said that Defendant "caused" child abuse, she "actually inflict[ed] the injury"; whereas, for those in which it was said that Defendant "permitted" child abuse, she allowed another person to inflict E.R.'s injuries and did not intervene, or she failed to get help for E.R.

{5}     At trial, the State primarily sought to prove that Defendant directly caused E.R.'s injuries—under the first and third alternatives. The jury rejected these alternatives, as well as the fourth one—that Defendant recklessly permitted E.R. to be tortured, cruelly confined, or cruelly punished. The jury convicted Defendant of all three counts based solely on the second alternative—that she "recklessly permitted by endangerment" each of E.R.'s injuries.

**DISCUSSION**

{6}     Defendant on appeal argues there is insufficient evidence of the actus reus— that she permitted E.R. to be placed in a situation that endangered his life or health.[2]

---

[2]To the extent Defendant also argues there is insufficient proof that she acted with the requisite mens rea—reckless disregard—we need not address this argument in light of our conclusion that there is insufficient evidence of the actus reus. *See*

*See* § 30-6-1(D)(1) (providing that "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, . . . permitting a child to be . . . placed in a situation that may endanger the child's life or health"); *see also State v. Leal*, 1986-NMCA-075, ¶ 14, 104 N.M. 506, 723 P.2d 977 ("When the state chooses to charge under only one portion of the statute (that [the] defendant 'caused' or [the] defendant 'permitted' the abuse), the prosecution is limited to proving what it has charged."). The jury instructions did not spell out precisely what unlawful act or omission Defendant did to permit E.R. to be endangered. *See Leal*, 1986-NMCA-075, ¶ 20 (concluding that the state failed to prove the defendant permitted child abuse because there was "no proof of any act or omission by [the] defendant"). Instead, the jury instructions corresponding to each of Defendant's convictions generically required, in relevant part, that Defendant "permitted blunt force trauma[, a broken arm, or bruises] to [E.R.]," and by doing so, she "permitted [E.R.] to be placed in a situation that endangered [his] life or health." *See* UJI 14-612(1), (2) NMRA; UJI 14-615(1), (2) NMRA.

---

*State v. Granillo*, 2016-NMCA-094, ¶ 9, 384 P.3d 1121 (providing that insufficiency of the evidence as to the actus reus or the mens rea of the offense of child abuse requires reversal); *see also Garcia*, 2021-NMSC-019, ¶ 26 ("[B]ecause the evidence was insufficient to prove that [the d]efendant's conduct resulted in [the child]'s death, we need not consider [the d]efendant's arguments regarding mens rea.").

{7} In view of this, we are left on appeal without clear guidance from the jury instructions as to what Defendant did, or did not do, to permit E.R. to be endangered.[3] We thus examine the theories of guilt advanced by the State. *See State v. Vasquez*, 2010-NMCA-041, ¶ 18, 148 N.M. 202, 232 P.3d 438 (examining the theories of guilt that could be discerned from the record where the state did not clearly distinguish the various theories). Beyond its principal theory that Defendant was the abuser, which the jury rejected, the State at trial briefly advanced two additional theories: (1) that Defendant permitted E.R. to be endangered by allowing

---

[3] Defendant challenges the actus reus elements of the jury instructions, contending they are vague, confusing, and invited speculation on the part of the jury. Defendant's concerns do not appear baseless. *See State v. Nichols*, 2016-NMSC-001, ¶ 36, 363 P.3d 1187 ("The [s]tate cannot offer a confusing array of evidence, submit several vague jury instructions on various potential theories, and leave to the jury the responsibility of putting it all together to find a basis for a conviction."); *see also* UJI 14-612 use note 2 (providing that "conduct," as used in the UJI, "describe[s] an act or a failure to act . . . that permits child abuse to occur"); UJI 14-615 use note 2 (same); *cf. State v. Consaul*, 2014-NMSC-030, ¶ 24, 332 P.3d 850 (concluding that the jury instruction impermissibly "did not require the jury to specify and unanimously agree upon which conduct caused [the child]'s injuries"). Additionally, Defendant challenges the mens rea element of the jury instructions, arguing the instructions improperly omitted a subjective intent requirement. This precise issue is pending before the New Mexico Supreme Court in *State v. Taylor*, 2021-NMCA-033, 493 P.3d 463, *cert. granted* (S-1-SC-38818, June 28, 2021). *See also* Order, *State v. Lujan*, S-1-SC-38914 (N.M. Feb. 16, 2022) (holding case in abeyance pending the Court's decision in *Taylor*, S-1-SC-38818); Order, *State v. Pino*, S-1-SC-39159 (N.M. Apr. 27, 2022) (same). Ultimately, however, because we conclude there is insufficient evidence to sustain Defendant's convictions, we do not resolve Defendant's claims of instructional error.

another person to abuse E.R., and (2) that Defendant permitted E.R. to be endangered by failing to obtain treatment for him.[4]

{8}     For each theory, "we apply a substantial evidence standard to review the sufficiency of the evidence." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted). Although this review is highly deferential to the jury's verdict, it is "the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted). Even viewing the evidence under

---

[4]Defendant raises (and discounts) a third theory of guilt on appeal—that she permitted E.R. to be endangered by leaving E.R. in her boyfriend's care for a short time on the day in question. The State did not appear to advance this theory of guilt below. Nor does the State advance this theory on appeal in defense of Defendant's convictions. There appears to be good reason for the State's omission. The State presented no evidence that Defendant's boyfriend posed a threat to E.R.'s health or safety. *See Leal*, 1986-NMCA-075, ¶ 20 (concluding that "the state did not prove [the] defendant permitted the abuse to occur" where, among other things, "[t]here was no evidence that [the] defendant . . . knew of a pattern of abuse, or had reason to suspect the child would be abused"). Absent such evidence, we are unable to say Defendant's act of briefly leaving E.R. in her boyfriend's care constituted the type of conduct criminalized by our child endangerment statute. *See State v. Chavez*, 2009-NMSC-035, ¶ 22, 146 N.M. 434, 211 P.3d 891 (providing that "the legislative purpose that animates the child endangerment statute [is] to punish conduct that creates a truly significant risk of serious harm to children").

6

this deferential standard, we conclude a rational juror could not have found Defendant guilty beyond a reasonable doubt under either theory advanced by the State.

**I.       Permitting Endangerment by Allowing the Boyfriend to Abuse E.R.**

{9}      We first address the State's theory that Defendant is guilty of permitting E.R. to be endangered because she allowed another person, specifically her boyfriend, to abuse E.R. The State argues on appeal that the jury could have inferred "[Defendant's boyfriend] must have caused [E.R.'s injuries] at a time when [Defendant] was with [the boyfriend] in the apartment." This echoes a suggestion made by the State at trial that the jury could find Defendant guilty of "permitting" child abuse because she was present during the time the State believed E.R. was abused.[5]

---

[5]Defendant argues that "the jury acquitted [her] of alternatives requiring her to have . . . directly permitted [the boyfriend] (or another) to inflict the abuse." In support, Defendant cites the jury's various not guilty verdicts. Defendant, however, does not explain why the jury's guilty verdicts—that she "recklessly permitted by endangerment" each of E.R.'s injuries—could not encompass the theory that she permitted her boyfriend to abuse E.R. We acknowledge that Section 30-6-1(D)(2) (child abuse by torture, cruel confinement, or cruel punishment) "would be a better fit" for the State's theory that Defendant directly permitted her boyfriend to abuse E.R. than Section 30-6-1(D)(1) (child abuse by endangerment). *See Nichols*, 2016-NMSC-001, ¶ 39 n.3; *see also Chavez*, 2009-NMSC-035, ¶ 15 ("Child abuse by endangerment, as opposed to physical abuse of a child, is a special classification designed to address situations where an accused's conduct exposes a child to a significant risk of harm, even though the child does not suffer a physical injury." (emphasis, internal quotation marks, and citation omitted)). Defendant, however, cites no authority for the contention that Section 30-6-1(D)(1) cannot, as a matter of

7

{10} Contrary to the State's suggestions below and on appeal, "[t]he fact that an injury occurred is not sufficient to prove" Defendant's guilt. *See Leal*, 1986-NMCA-075, ¶ 16. Instead, to sustain Defendant's convictions under the State's first theory, the State was obligated to present evidence demonstrating that Defendant committed "the passive act of allowing the abuse to occur." *See id.* ¶ 19; *see also id.* ¶ 18 ("[T]he state has the burden of proving beyond a reasonable doubt that [the defendant] permitted the [abuse]."). The State's answer brief fails to direct us to any act or omission by Defendant establishing that she allowed her boyfriend to abuse E.R. Nor are we able to find such evidence in the record. Indeed, the State, at trial, attempted to convince the jury that the boyfriend did *not* harm E.R. In its opening statement, the State contended that "the evidence will repeatedly show that [the boyfriend] didn't hurt little [E.R.]" The State also elicited testimony that neither the boyfriend nor his teenage son—the only other people in the apartment during the relevant period—caused E.R.'s injuries. This strategy was consistent with the State's primary theory that Defendant, rather than her boyfriend, inflicted E.R.'s injuries;

law, encompass a theory of directly permitting another to inflict abuse. *See Nichols*, 2016-NMSC-001, ¶ 39 n.3 (not "reach[ing] the propriety" of charging a theory of child endangerment where the defendant inflicted the injury). We therefore do not consider this argument further. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."); *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts are under no obligation to review unclear or undeveloped arguments).

8

but it was inconsistent with the alternative theory that Defendant allowed her boyfriend to abuse E.R.

{11} To the extent the State makes the specific contention on appeal that the abuse occurred when Defendant and her boyfriend were alone in her bedroom with E.R., the evidence in this regard is lacking. The State did not present any direct evidence establishing what occurred in the bedroom, other than the teenage son's testimony that he heard the boyfriend say that E.R. was choking before he and the boyfriend hurriedly left the apartment. Nor did the State's medical expert offer any clarity in the way of circumstantial evidence. The State's expert did not establish when the injuries occurred, providing only that E.R.'s broken arm, which the expert testified was not necessarily indicative of child abuse, occurred within the ten days preceding E.R. being taken to the hospital. The expert further testified that E.R.'s bruises could have been caused "as much as a week before" E.R. being taken to the hospital. Lastly, the expert did not offer any opinion on when the liver laceration occurred, stating only that symptoms other than pain would have progressed "over time."

{12} Without direct evidence of the State's theory that Defendant allowed her boyfriend to abuse E.R. or circumstantial evidence as to when E.R. was injured, the jury was left to speculate about what conduct Defendant engaged in. *See id.* ¶ 17 ("Without evidence as to when the injury occurred, the jury was required to speculate who was or might have been with [the child] when [they were] injured."). This is

impermissible. *See State v. Trossman*, 2009-NMSC-034, ¶ 24, 146 N.M. 462, 212 P.3d 350 ("Although a jury is certainly entitled to draw reasonable conclusions from the circumstantial evidence produced at trial, it must not be left to speculate in the absence of proof." (citation omitted)); *Slade*, 2014-NMCA-088, ¶ 14. Defendant's convictions under the State's first theory of guilt therefore cannot be sustained.

## II.     Permitting Endangerment by Medical Neglect

{13}     We next address the State's theory that Defendant is guilty of permitting E.R. to be endangered by not obtaining treatment for him. We understand that the State contends Defendant is guilty of child endangerment by medical neglect, a type of child abuse recognized by our courts though not explicitly defined by New Mexico's child abuse statute. *See* § 30-6-1(D) (defining "abuse of a child"); *State v. Nichols*, 2016-NMSC-001, ¶ 45 n.4, 363 P.3d 1187 (noting the "novelty" of the state's "theory of medical neglect as a form of child endangerment").

{14}     Before examining the record for substantial evidence on the State's medical neglect theory, we briefly address legal concerns we have with this theory in relation to the jury instructions given and the verdicts returned by the jury. First, this theory of guilt does not square with the elements in the instructions given to the jury. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). The instructions

describe the actus reus as being that "[Defendant] permitted blunt force trauma[, a broken arm, or bruises] to [E.R.]"—not that Defendant failed to seek treatment for those injuries. Second, if the jury convicted Defendant on a theory of medical neglect, as the State proposes, there would be a conflict in the jury's verdicts on each count. Specifically, the jury would have found Defendant not guilty of *causing* E.R. to be endangered by medical neglect, but found her guilty of *permitting* E.R. to be endangered by medical neglect. Notably, the instructions did not explain to the jury the difference between "causing" and "permitting" endangerment by medical neglect. *See Nichols*, 2016-NMSC-001, ¶ 36 (providing, under analogous circumstances, that "[t]he [s]tate cannot offer a confusing array of evidence, submit several vague jury instructions on various potential theories, and leave to the jury the responsibility of putting it all together to find a basis for a conviction"). Under such circumstances, our Supreme Court has explained that "the verdicts rendered by the jury—not guilty of causing medical neglect and guilty of permitting medical neglect—hopelessly conflict under our legal analysis and preclude any determination of which culpable act was the actual basis for the jury's conviction of [the defendant]." *Id.* This is because:

> Causing and permitting abuse seem to lose their distinction . . . when the charge is based on a theory of endangerment by medical neglect. . . . A person, acting alone, does not permit [themselves] to fail to seek medical care. And in the case of two or more people present when the medical neglect occurs, each person independently either fails to act and is culpable for endangerment by medical neglect, or does not fail

> to act in which case there is no neglect. In both situations, each person who fails to act is primarily responsible and therefore must have caused the abuse.

*Id.* ¶¶ 34-35.

{15} Irrespective of these concerns, we conclude there is insufficient evidence to sustain Defendant's three convictions under a theory child endangerment by medical neglect. As for the two counts of child abuse resulting in great bodily harm, the causation element is not met. For each count, that element read, "[Defendant]'s conduct resulted in great bodily harm to [E.R.]" *See* UJI 14-615(5). Under a medical neglect theory, the State had to "put forth substantial evidence that [Defendant]'s neglect 'resulted in' [E.R.]'s . . . great bodily harm, meaning that medical neglect was at least a significant cause of his . . . great bodily injury." *See Nichols*, 2016-NMSC-001, ¶ 40; *see also State v. Garcia*, 2021-NMSC-019, ¶ 39, 488 P.3d 585 ("[C]ausation in a criminal medical neglect case must include but-for causation and no less."). As Defendant points out in her brief in chief, there was no evidence presented that her failure to seek treatment for the injuries resulted in great bodily harm to E.R. Tellingly, the State offers no response to this point. This lack of causation evidence likely is due to the fact that the trial never really was about medical neglect. *See Nichols*, 2016-NMSC-001, ¶ 46. As noted, the State focused its case on its principal theory—that Defendant inflicted E.R.'s injuries—and only mentioned a medical neglect theory briefly during its closing. *See id.* ¶ 47

12

(explaining, under analogous circumstances, that "[b]ecause the [s]tate lost the jury on its principal theory and failed to offer substantial evidence to prove its fall-back position, the [s]tate cannot be heard to complain"). Given the lack of evidence that medical neglect was "at least a significant cause" of E.R.'s great bodily injuries, *see id.* ¶ 40, Defendant's child abuse (resulting in great bodily harm) convictions cannot be sustained under such a theory. *See id.* ¶¶ 37, 40 (reversing a child abuse conviction because there was insufficient causation evidence to support the theory of child endangerment by medical neglect).

{16}   As for the third count related to bruises, which did not include the causation element described above, the medical neglect theory also fails. The State presented no evidence suggesting that medical treatment was even necessary for the bruises, *see id.* ¶ 34 (providing that "[m]edical neglect, by definition, can only be charged when someone fails to seek or provide *necessary* medical care" (emphasis added)), much less that Defendant's failure to seek any such treatment put E.R. "in a situation that endangered [his] life or health," as required by the jury instruction defining the offense, *see* UJI 14-612(2). Defendant's conviction on this count likewise cannot be sustained under a theory of medical neglect. *Cf. Nichols*, 2016-NMSC-001, ¶ 37.

**CONCLUSION**

{17}   For the foregoing reasons, we reverse Defendant's convictions and remand to the district court to vacate Defendant's sentence and dismiss the charges against her.

*See State v. Consaul*, 2014-NMSC-030, ¶¶ 3, 93, 332 P.3d 850 (reversing the defendant's child abuse conviction and ordering the charge be dismissed with prejudice after concluding the conviction was not supported by sufficient evidence).

{18}     **IT IS SO ORDERED.**


_____
**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**SHAMMARA H. HENDERSON, Judge**