SUTIN, Judge (specially concurring). {17} Although the facts of this case are disturbing, to conclude that there was sufficient evidence for jury consideration on the abuse charge expands the scope of Section 30-6-1 (D)(1) beyond what can reasonably have been the Legislature’s intent or any permissible reach of the statute. To interpret Section 30-6-l(D)(l) as permitting the State under the circumstances of this case to charge an intoxicated parent who falls asleep and whose three-year-old child ends up outside at 2:00 a.m., leaves thousands of parents at risk of felony prosecution based on little, if anything, more than evidence of intoxication, sleep, and an apparently unsecured door — evidence that, viewed objectively, without more, should not constitute the level of behavior contemplated by the Legislature in criminalizing, by felony, negligent child abuse by endangerment. {18} “[Cjriminal negligence for purposes of child endangerment is measured objectivelyf.]” Chavez, 2009-NMSC-035, ¶ 45. It occurs “when a person should be aware of a substantial and unjustifiable risk that harm will result from his conduct.” Id. (alteration, internal quotation marks, and citation omitted). And it requires the risk to be “of such a nature and degree that the [defendant’s] failure to perceive it, considering the nature . . . of [the defendant’s] conduct and the circumstances known to [the defendant], involves a gross deviation from the standard of care.” Id. (internal quotation marks and citation omitted). By classifying it as a third degree felony, our Legislature anticipated that criminal prosecution of child abuse by endangerment would be reserved for application to the most dangerous circumstances and not to “theoretical dangers.” Id. ¶ 16. {19} Two sources of possible risk of harm to Child existed in this case: (1) the condition of the apartment, in which vodka bottles, beer cans, an open pocket knife, a partially burned marijuana cigarette, and a homemade marijuana pipe were found; and (2) Defendant becoming intoxicated by drinking alcohol and smoking marijuana, then falling asleep, and the fact that the three-year-old Child left the apartment of his own accord. N either provided sufficient evidence for conviction in this case. The Apartment {20} In my view, the evidence regarding the condition of the apartment was not sufficient in any respect to support the charge. Although Officer Mullins testified that he found a small, burnt portion of a marijuana cigarette in the apartment, he did not specify where it was. He testified that the alcohol-related bottles and cans that were within Child’s reach were empty, and he was concerned not that Child would drink from them, but that Child could cut himself on the cans. The State presented no evidence that any liquid remained in any bottle or can within Child’s reach. The opened folding pocket knife was on the dresser in Defendant’s bedroom; and although Officer Mullins, based on a “visual reference” that involved estimating Child’s height as compared with the height of the dresser, believed that Child was tall enough to reach the knife, Child would have had to reach over his head to get it. The marijuana pipe was in the middle of the dining room table, and the pipe appeared to have been recently used, but there was no evidence that there was marijuana in the pipe when Officer Mullins found it. {21} In criminalizing child abuse, the Legislature intended the statute to encompass “conduct that creates a truly significant risk of serious harm to children.” Id. ¶ 22. The evidence relating to the bottles, cans, and knife was sufficient to establish a risk of harm that might well have alerted the Children, Youth and Families Department to initiate civil abuse and neglect proceedings, but, viewed .objectively, the evidence was not sufficient to establish a risk of harm giving rise to a felony charge of criminal child endangerment. See id. ¶¶ 12-16 (recognizing that within the framework of civil and criminal laws aimed at ameliorating child abuse and neglect, the prosecution has “a broad array of civil remedies” and that criminal sanctions for child abuse fall on “the far end of [the] spectrum” and are “reserved for the most serious occurrences”). {22} Marijuana, of course, can pose a known risk of harm.[1] See State v. Graham, 2005-NMSC-004, ¶¶ 10, 14, 137 N.M. 197, 109 P.3d 285 (upholding a child abuse conviction where children were in a house in which marijuana was found on the floor, and in an infant’s crib, and was easily accessible to the children). But in this case there was no evidence that the burnt marijuana cigarette was within Child’s reach. Nor was there evidence that the amount of marijuana that remained in the small, burnt portion of the cigarette, or that the homemade marijuana pipe, presented a risk of “serious harm” to Child. Under these circumstances, the marijuana-related evidence does not support a negligent endangerment conviction. See Chavez, 2009-NMSC-035, ¶¶ 37-40 (requiring the prosecution to establish a connection between the hazards present in the home and a serious risk of harm to the children). {23} In sum, the evidence of the condition ofDefendant’s apartment, whether parsing the evidence or considering the totality of the circumstances, was insufficient to prove a “serious risk” as that term was used by our Legislature in drafting Section 30-6-l(D)(l) and as it has been interpreted by our Supreme Court as evincing legislative purpose “to punish conduct that creates a truly significant risk of serious harm to children.” Chavez, 2009-NMSC-035, ¶ 22. Further, the condition cannot be piggy-backed onto a felony abuse charge based on Defendant’s conditions of intoxication, sleep, and failure to secure the door. Defendant’s Intoxication and Sleep and Child Outside {24} Paramount to the State’s argument regarding the sufficiency of the evidence is the risk of harm that was created by a combination of Defendant’s intoxication and the fact that Child left the apartment. The evidence at trial left no room for doubt that Defendant was intoxicated, sound asleep and, apparently, oblivious to the fact that Child had left the apartment. {25} Yet, viewing the evidence objectively, as we must, and in terms of legislative intent, the critical question is whether the evidence at trial of the foreseeability factor was sufficient for a jury to convict for felony child abuse under Section 30-6-l(D). See Chavez, 2009-NMSC-035, ¶ 47 (“However, in addition to the gravity of the potential [harm], we must also consider whether it was foreseeable that an injury would actually occur.”). In other words, was the possibility of Child leaving the apartment of his own accord an “obvious risk” such that a reasonable person would have, and Defendant should have, perceived it? See id. ¶¶ 45, 52 (discussing the notion of foreseeability in the context of negligent child endangerment). The State failed to present any evidence to support a jury determination that Defendant should have known that Child would leave the apartment by himself and wander outside. {26} Nothing was presented to show whether the door was left open or opened by Child, to show whether the door was locked by a particular locking mechanism and Child had learned from observation how to work the lock, or to show that Child had a propensity to wake up at night and wander around, much less outside. No evidence was presented regarding Child’s night-time habits, including whether he ever left his bed after midnight, or whether he tended to wake Defendant up or get her attention after she went to bed. Nor did the State present evidence regarding the extent, if any, to which Child knew how to operate the door, or whether he had ever, before the night of this incident, attempted to leave or had ever left Defendant’s apartment by himself. See id. ¶¶ 52-53 (reversing a child abuse by endangerment conviction where the conviction was “supported primarily by speculation and surmise”). Nor was there evidence whether Defendant had secured the door (as she may always have done), and her boyfriend had opened the door and failed to secure it afterward. In sum, what we have in this case is the State’s failure to present sufficient evidence to prove that Defendant should have been concerned about a risk of Child going outside that night. In other words, the State did not establish that the risk of Child leaving the apartment in the middle of the night to wander around outside was an obvious one that a reasonable person would have perceived and of which Defendant should have been aware. See id. ¶¶ 45,47, 52. The jury was thus left to speculate as to the foreseeability of the risk. {27} Thus, in the absence of evidence other than intoxication, sleep, and the fact that Child was outside, the State did not establish foreseeability. Defendant’s intoxication and sleep status did not, objectively speaking, create more than a mere possibility that Child might wander outside around 2:00 a.m. by himself. The State cannot defend its failure of evidence by arguing that the factors of foreseeability can come only from Defendant testifying. We are left in the dark whether witnesses existed who could testify regarding factors such as those we have identified relating to foreseeability, including, possibly, the boyfriend who was at Defendant’s apartment overnight, or relatives, friends, and neighbors, who may have been familiar with Child’s propensities and capabilities and with Defendant’s knowledge. {28} The facts of this case unquestionably induce a visceral or emotional reaction that stems from the circumstance of a three-year-old child being found outside at 2:00 a.m., in the cold and alone, while his mother lay inside her apartment, intoxicated and asleep. One’s immediate reaction is to conclude that any parent who voluntarily drinks too much and to a point of falling into a heavy sleep and who, presumably, fails to first assure that the apartment’s doors are secure deserves to be charged and convicted for felony child abuse and to risk imprisonment. Viewed objectively, however, the facts established nothing more than that Defendant became intoxicated in her own home and fell asleep, and Child was found outside. ThatDefendant responded with what appeared to be an “I-could-not-care-less” attitude to the neighbor’s arousing her to an awakened state says nothing about foreseeability, especially given that Defendant was awakened from what wasi apparently a deep sleep and intoxicated condition. The fact of the matter stands: no evidence was presented to support the jury’s finding, beyond a reasonable doubt, that Defendant could or should have foreseen that Child would leave the apartment in the middle of the night of his own accord and wander outside. {29} Even were one to assume that Defendant fell asleep without first locking the door in a failsafe manner to prevent Child from leaving, to uphold Defendant’s conviction in this case is to set a very worrisome, if not dangerous precedent — one paramount to saying that any parent of a child who becomes intoxicated in his or her own home, or even one who takes sleep-inducing drugs such as sleeping pills, muscle relaxants, or cold medication and then falls into a heavy or deep sleep forgetting to first secure all doors leading outside, is chargeable for a third degree felony should his or her child go outside with exposure to possible harm. This cannot have been the intent of the Legislature in drafting Section 30-6-l(D). See Chavez, 2009-NMSC-035, ¶ 10 (“A criminal statute may not be applied beyond its intended scope, and it is a fundamental rule of constitutional law that crimes must be defined with appropriate definiteness.” (internal quotation marks and citation omitted)); id. ¶ 16 (explaining that “our endangerment statute [taken literally] could be read broadly to permit prosecution for any conduct, however remote the risk, that may endanger a child’s life or health”; thus, courts must take “a more restrictive view of the endangerment statute” and apply it only to the most serious occurrences of child endangerment (alteration and internal quotation marks omitted)). {30} To summarize, the bare facts of this case — intoxication to some unknown degree resulting in some degree of heavy sleep and Child having left the apartment — are little different from, and could well constitute, the unastonishing circumstances that regularly exist for thousands of parents throughout N ew Mexico who drink alcoholic beverages, take prescribed or over-the-counter sleep-inducing drugs, and fall asleep, even including parents who forget to assure that the front door is secure. Without greater objective proof establishing foreseeability, upholding Defendant’s conviction leaves far too wide a prosecutorial universe than what I believe the Legislature could reasonably have intended. As the facts stand in this case, Defendant’s conduct should have been handled, if at all, pursuant to the Legislature’s civil abuse and neglect laws. JONATHAN B. SUTIN, Judge As can many prescribed medications, including “medical marijuana,” if carelessly left within a child’s reach.